# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY 1996 SESSION



FILED

March 26, 2008

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 02C01-9512-CC-00376 |
| | ) | |
| Appellee, | ) | WEAKLEY COUNTY |
| | ) | |
| VS. | ) | Hon. William B. Acree, Jr., Judge |
| | ) | |
| TIMOTHY ADAMS, | ) | (Attempt to Commit First Degree |
| a/k/a SKINNY ROCK, | ) | Murder/Aggravated Assault) |
| | ) | |
| Appellant. | ) | No. 2569 BELOW |

FOR THE APPELLANT:

JOHN E. HERBISON
2016 Eighth Avenue South
Nashville, TN 37204

JOSEPH P. ATNIP
District Public Defender

J. D. KENDALL
Assistant District Public Defender
Post Office Box 734
Dresden, TN 38225

FOR THE APPELLEE:

CHARLES W. BURSON
Attorney General and Reporter

KIMBERLY A. CHANCE
        Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

THOMAS A. THOMAS
District Attorney General
Post Office Box 218
Union City, TN 38261

OPINION FILED:_____

AFFIRMED IN PART; REVERSED IN PART

CORNELIA A. CLARK,
Special Judge

## OPINION

1

The Defendant appeals to this court as of right from a judgment entered on a Weakley County jury verdict convicting him of attempt to commit first degree murder and aggravated assault. The defendant presents four issues for review: (1) that the evidence was insufficient to support a guilty verdict for attempt to commit first degree murder; (2) that principles of double jeopardy prohibit his conviction for both attempt to commit first degree murder and aggravated assault; (3) that the twenty-five year sentence for attempt to commit first degree murder is excessive; and (4) that the court erred in ordering the sentences to be served consecutively to four prior sentences of incarceration.

After review of the record, we affirm in part and reverse in part the trial court's decision.

Timothy "Skinny Rock" Adams, the defendant, and Tammy Chambers had been dating for about six months when she terminated their relationship on New Year's Day, 1995. She moved in with another man, Worick "Tank" Davis, and began residing at the Martin Plaza Motel, in Martin, Tennessee. Defendant, upset by this rejection, visited the motel several times and wrote Chambers a letter promising her all the drugs she wanted if she would return to him. He claims that she continued to ask him for money and that she had sexual relations with him three days before the shooting. Based on these mixed signals, defendant was very frustrated about the relationship.

On January 25, 1995, defendant spoke to Chambers several times by phone. He told her he loved her and wanted her back. When he asked if she would be at the motel later in the day, she lied, stating that she and Davis were leaving town. Defendant immediately drove from Union City, Tennessee, to the Martin Plaza Hotel. He traveled with A. J. Jones and another individual. Upon arrival at the hotel he asked Jones to knock on a particular door and ask for a particular man.

At approximately 2:00 P.M., while Chambers was napping, Jones knocked on her motel room door, asking about an individual named Marvin Kirk. The

persons actually in the room were Tammy Chambers, her friend Gloria Taylor, and Ms. Taylor's two young daughters. The four-year old daughter answered the door. Chambers told Jones that Kirk was not in the room, and Jones began to leave.

As Jones left, the defendant came into the room and began to curse at Chambers. According to her he was extremely angry. He asked Chambers to meet privately with him in the bathroom but she declined. Within minutes he pulled out a gun, stating "I come to kill y'all" and "If I can't have you, can't nobody else". Defendant took some bullets out of the gun, stating that he was saving them for Tank. He first stated that he "ought to wait for Tank" but then apparently decided not to. He shot Chambers as she was reclining on the bed. She was hit once. The bullet went through her body from the right side of her left breast and exited under her left armpit. Defendant, who was standing near the motel door, fled quickly.

Gloria Taylor summoned a police officer, who encountered Tammy Chambers in the parking lot. She was clutching her chest and screaming that she had been shot. Her clothes were soaked with blood, and blood was running through her fingers as she clutched her wound. The officer eventually took Ms. Chambers into the room and administered first aid. She identified the defendant as her assailant. At the time of the shooting she was pregnant. Ms. Chambers believed defendant was the father.

Ms. Chambers was taken by ambulance to a hospital in Martin, and then was taken by helicopter to Memphis. She underwent surgery there and remained in the hospital for about one week.

After defendant was taken into custody and advised of his rights, he gave a statement to Martin Police investigator J. D. Sanders. Defendant stated that he had gone to the motel with the intention of killing both Ms. Chambers and Tank.

I.

3

Defendant first contends the evidence presented by the state is not sufficient to sustain his conviction for attempt to commit first degree murder. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The offense of attempt to commit first degree murder as charged in this case is defined by reference to two statutes. T.C.A. §39-12-101(a)(2) provides in pertinent part:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense: . . .
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part.

T.C.A. §39-13-202(a)(1) provides:

4

(a)     First degree murder is:

(1)     An intentional, premeditated and deliberate killing of another.

Defendant's only allegation about the insufficiency of the evidence is that the state did not prove that defendant had a subjective belief that his conduct, without more, would cause Tammy Chambers' death.  This assertion is incorrect. Defendant carried a loaded gun into a room occupied by Ms. Chambers.  He stated "I come to kill y'all".  He further stated "If I can't have you, can't nobody else".  He then took some bullets out of the gun, stating that he was saving those for Tank. He told Chambers that he "ought to wait for Tank" but then went ahead and shot Chambers in the chest at close range as she was lying on the bed in the small motel room.  After the shooting, defendant immediately fled the scene.  A short time later defendant advised A. J. Jones that he had shot Chambers.  After he was arrested, he also told authorities that he had shot Chambers, and that he had traveled to the motel with the intention of killing both Chambers and Tank.

When an individual shoots a gun point blank at another individual, obviously hitting the other individual, there is no conduct left to cause the result (death) intended.  A rational trier of fact reasonably could conclude that the defendant believed that the result he intended would be caused without further conduct on his part.  This issue has no merit.

II.

Defendant does not contest the sufficiency of the evidence to convict him of aggravated assault.  He asserts, however, that he cannot be convicted of both attempted first degree murder and aggravated assault based on principles of double jeopardy.  We agree, although we also base our finding on due process considerations.

5

Several previous cases have addressed similar issues on different bases. In State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), the Tennessee Supreme Court held that aggravated assault is neither a lesser grade nor class of the offense of attempt to commit first degree murder. The court clarified the differences between lesser grades/classes of offenses and lesser included offenses. The Trusty court determined that aggravated assault is not a lesser grade or class of first-degree murder. 919 S.W.2d at 311. Thus, the court held that a defendant indicted for attempted first degree murder could not be convicted of the uncharged offense of aggravated assault.

In Tennessee, whether two offenses are the "same" for double jeopardy purposes may depend upon (1) whether the event is a violation of two distinct statutory provisions, (2) whether either offense is necessarily included in the other, (3) whether the offenses require proof of different elements, (4) whether each offense requires proof of additional facts not required by the other, and (5) whether the legislative intent suggests that one or several offenses were intended. See State v. Black, 524 S.W.2d 913, 918-20 (Tenn. 1975). In Black, the Supreme Court expressly approved the test for double jeopardy that it had announced in Dowdy v. State, 158 Tenn. 364, 13 S.W.2d 794 (Tenn. 1928) and Duchac v. State, 505 S.W.2d 237 (Tenn. 1973) -- whether the same evidence is necessary to prove both offenses.

The analysis is also guided in part by the application of the test announced in Blockberger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

The offense of aggravated assault, as charged here, requires proof that

6

defendant intentionally, knowingly, or recklessly causes bodily injury to the victim by use of a deadly weapon. Tenn. Code Ann. §39-13-102(a)(1). The offense of attempt to commit first degree murder requires proof that defendant unlawfully attempted to kill the victim and that the attempt to kill was intentional, premeditated and deliberate.[1] Aggravated assault requires proof that defendant caused bodily injury; whereas, attempted first degree murder does not. Attempted first degree murder requires proof that defendant intended to kill his victim; whereas, aggravated assault does not. Application of the Blockberger test indicates that the legislature intended to allow separate punishment for each of these offenses. See State v. Denton, _____ S.W.2d _____ (Tenn. 1996). However, our analysis does not end here.

In State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), the Supreme Court suggested that convicting a defendant of two crimes, one of which was incidental to the other, would violate the defendant's due process rights. The analysis in Anthony did not turn on an examination of the statutory elements of the two offenses at issue, but rather on whether the facts on which one charge was based were an integral part or essential element of the other charge. 817 S.W.2d at 303-304. If one offense is "essentially incidental" to the other, it is not significant enough to warrant a separate prosecution or conviction under the due process clause of the Tennessee Constitution.

While the decision in Anthony addressed the particularly anomalous nature of the kidnapping statute, the Supreme Court has recently held that the principles of Anthony can apply to circumstances involving offenses other than kidnapping. State v. Denton, _____ S.W.2d _____, slip op. at 9 (Tenn. 1996). Denton addresses more specifically the due process issues inherent in a double jeopardy

_____

[1]Tenn. Code Ann. §§39-12-101 (attempts); 39-13-211(a) (first degree murder).

7

analysis.

Just as in <u>Denton</u>, the evidence in this case consisted of a single attack by defendant on the victim. The state necessarily relied on the same evidence to establish both the aggravated assault and the attempted first degree murder. Thus, application of <u>Denton</u> indicates the two offenses are "the same" for double jeopardy purposes. There is one discreet act and one victim. The evil at which the offenses are directed is the same. Both are intended to deter assaultive conduct.

We therefore conclude that the particular facts of this case and the common purpose served by the two statutes prevent the imposition of multiple convictions on this defendant. Accordingly, we affirm the conviction for attempt to commit first degree murder. We reverse the conviction for aggravated assault, vacate the sentence imposed, and dismiss the indictment.

III.

Defendant next challenges the sentences imposed upon him. The trial court imposed concurrent sentences of twenty-five years for attempt to commit first-degree murder and six years for aggravated assault.[2] Each represents the maximum Range I sentence for the particular offense.

When an accused challenges the length, range or manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with the presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances". <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a de novo review of a sentence, the court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the

_____

[2]Based on our holding above, we will not address the sentence for aggravated assault.

8

presence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§40-35-102, -103, and -210. See State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The trial court found as enhancement factors the following as set forth at Tenn. Code Ann. §40-35-114:

(1)    The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. This factor is clearly established by the evidence. The defendant had four adult convictions for sale of cocaine[3] and one conviction for aggravated burglary. He also had a lengthy juvenile record[4] and a lengthy misdemeanor record.

(2)    The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. This factor is clearly established by the evidence. Defendant's parole on the aggravated burglary conviction was revoked in 1993. He also violated juvenile probation on several occasions.

---

[3]After this offense was committed, but before sentencing occurred, defendant committed and was convicted and sentenced for these four offenses.

[4]A recent amendment to Tenn. Code Ann. §40-35-114 requires that only those delinquent acts by a juvenile that would constitute a felony if committed by an adult be considered to enhance a sentence. That provision of the act took effect on July 1, 1995, and applies to sentencing of any defendant committing an offense on or after that date. In this case the offenses were committed January 26, 1995. The defendant was tried June 29, 1995, and sentenced August 18, 1995. However, the fact that the sentencing judge also considered unruly or other delinquent acts by the defendant is not error since the offense in this case occurred prior to the amendment which restricts the enhancement factor to felony acts.

9

The trial court found no mitigating factors. We also agree that the record does not support the findings of any specific mitigating factors as set forth in the statute. The trial judge found that defendant had no work history other than selling drugs and committing other criminal offenses. He also found that defendant's testimony at the sentencing hearing that he did not commit the offense was "incredible" and contrary to the testimony of several witnesses. He therefore took defendant's veracity into account. A defendant's untruthfulness is a factor which may be considered in the sentencing process. See U.S. v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

The sentencing range for attempt to commit first-degree murder is from fifteen to twenty-five years. In calculating a sentence for a felony conviction, the presumptive sentence is the minimum sentence in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. §40-35-210. But see 1995 Tenn. Pub. Acts ch. 493 (amending the statute for offenses occurring on or after July 1, 1995, to make the presumptive sentence for a Class A felony the mid-point in the range). Where there are enhancement factors but no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The existence of applicable enhancement factors and lack of any mitigating factors support the maximum sentence in this case. This issue is without merit.

IV.

Defendant next challenges the trial court's decision to run this sentence consecutively to four unexpired prior sentences. The offenses in question were committed after the offenses that are the subject of this appeal, but the sentences were imposed prior to sentencing in this case.

10

Under Tennessee Rule of Criminal Procedure 32(c)(2), if a defendant has additional sentences not yet fully served and if this fact is made known to the court prior to sentencing, the court shall recite this in the judgment setting sentence, and the sentence imposed shall be deemed to be concurrent with the prior sentences, unless it affirmatively appears that the new sentence being imposed is to be served consecutively. Whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. State v. James, 688 S.W.2d 463 (Tenn. Crim. App. 1984). Tenn. Code Ann. §40-35-115(b) authorizes the imposition of consecutive sentences if the court finds by a preponderance of the evidence that the defendant is (1) a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood, or (2) an offender whose record of criminal activities is extensive. The trial court found both of these factors to be present in this case. We do not disagree.

Defendant in this case had no work history other than selling drugs and committing other criminal offenses. Defendant himself stated "that he had never acquired employment during his adult life . . . [and] obtained money by various means other than employment". Defendant had an extensive history of juvenile problems, an extensive history of misdemeanor convictions, a conviction for aggravated burglary, and four Class B felony convictions for sale of cocaine. Defendant argues that his juvenile record should not be considered in support of this factor. However, a juvenile record of criminal conduct may properly be considered in assessing a suitable sentence after a felony conviction by an adult. State v. Stockton, 733 S.W.2d 111, 112-13 (Tenn. Crim. App. 1986).

Extensive criminal history alone will support consecutive sentencing. See, e.g., State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994). Additionally, the record supports the trial court's determination that the defendant devoted himself to criminal acts as a major source of his income. The trial judge did not abuse his discretion in ordering the sentences to be served consecutively to

11

prior unexpired sentences.  This issue is without merit.

For the reasons set forth above, we affirm the judgment of the trial court in part and reverse in part.

_____
CORNELIA A. CLARK
SPECIAL JUDGE

CONCUR:

_____
JOHN H. PEAY
JUDGE

_____
DAVID H. WELLES
JUDGE

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JULY 1996 SESSION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 02C01-9512-CC-00376 |
| | ) | |
| Appellee, | ) | No. 2569 BELOW |
| | ) | |
| VS. | ) | WEAKLEY COUNTY |
| | ) | |
| TIMOTHY ADAMS, | ) | (Attempted Murder/Aggravated Assault) |
| a/k/a SKINNY ROCK, | ) | |
| | ) | AFFIRMED |
| Appellant. | ) | |

## JUDGMENT

Came the appellant, Timothy Adams a/k/a Skinny Rock, by counsel and also came the attorney general on behalf of the state, and this case was heard on the record on appeal from the Criminal Court of Weakley County; and upon consideration thereof, this court is of the opinion that there is reversible error in a portion of the judgment of the trial court.

It is, therefore, ordered and adjudged by this court that the judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the Criminal Court of Weakley County for execution of the judgment of this court and for collection of costs accrued below.

Costs of the appeal will be paid into this Court one-half by each party, for which let execution issue.

Per Curiam
Peay, Welles, Clark