IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2011

**STATE OF TENNESSEE v. JAMES MICHAEL WISE**

**Direct Appeal from the Criminal Court for Sumner County**
**No. 2007-CR-719      Dee David Gay, Judge**

**No. M2010-01065-CCA-R3-CD - Filed August 12, 2011**

The defendant, James Michael Wise, was convicted by a Sumner County jury of three counts of sexual battery by an authority figure, two counts of solicitation to commit rape, thirteen counts of rape, and thirteen counts of incest. Following a sentencing hearing, the trial court sentenced the defendant to an effective forty-eight-year sentence in the Department of Correction. On appeal, the defendant challenges the sentences imposed. Specifically, he contends that the trial court erred in failing to impose the minimum sentences within the range and in its application of consecutive sentencing. Following review of the record, we find no error and affirm the sentences as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Kenneth J. Phillips, Gallatin, Tennessee, for the appellant, James Michael Wise.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Sallie Wade Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The defendant does not challenge the facts giving rise to his convictions in this case. Therefore, we will provide only those facts necessary to place the issues in proper perspective. The defendant was convicted as a result of repeatedly raping his stepdaughter over a period of two years. The defendant initially denied the allegations of sexual

misconduct but at some point in the investigation admitted that "he knew that what he had done was not right."

The defendant was indicted by a Sumner County grand jury for seven counts of sexual battery by an authority figure, five counts of solicitation to commit rape, twenty-five counts of rape, and twenty-four counts of incest. A jury trial was commenced, and, after the State had rested its case-in-chief, the trial court granted a judgment of acquittal with regard to twenty-seven of the counts based upon the State's failure to establish the necessary elements of the crimes. The jury additionally found the defendant not guilty of three counts. Thus, after the trial, the defendant stood convicted of thirty-one counts, those being three counts of sexual battery by an authority figure, two counts of solicitation to commit rape, thirteen counts of rape, and thirteen counts of incest.

The trial court subsequently held a sentencing hearing at which numerous witnesses testified. First, the victim's mother took the stand and related the various financial and emotional difficulties which had resulted following the defendant's actions and arrest. She also related how the victim had been affected by these crimes, stating that she was more withdrawn, less trusting, and had become physically ill. The victim's twelve-year-old brother also testified and stated that the defendant was both verbally and physically abusive to members of the family.

The victim also testified at the hearing and stated that she had considered the defendant as a father figure since she was eight years old. She testified that when the defendant was committing these crimes, all she could think was "what did I do to deserve this?" The victim stated that she was slowly rebuilding her life after the trauma caused by the defendant. Also called to testify were two counselors who had treated the victim following these incidents. Each gave testimony about how the victim came to them suffering from anxiety, depression, and panic attacks. One opined that the victim would need treatment for a long time and that she would probably always have issues with her family and trusting.

Donna Moore, a psychologist, testified that she had conducted a psychosexual examination of the defendant. According to her, the defendant still shifted the blame to the victim, which did not bode well for future treatment. The defendant informed Dr. Moore that he had an unsatisfactory relationship with his wife, did not want to have an affair, and did not consider what happened with the victim to be an affair, as it remained within the household. Dr. Moore also testified that she administered several psychological tests, but the results were rendered meaningless because the validity scales indicated that the defendant was not answering truthfully.

Dr. Moore was quick to point out that, although she had rated the defendant at a low risk to reoffend compared to other sexual offenders, the low score was primarily the result of the nature of the crimes and the fact that he was a first-time offender. Her report noted that "[the defendant's] preference for an available victim over an extended period of time suggests a pervasive, sexual disorder (hebaphilia) and likely underestimates his risk according to actuarial methods of assessment."

The defendant called two character witnesses, introduced numerous letters of support from friends, and testified himself. During his testimony, the defendant maintained that only one sexual incident had occurred and that it had been the victim who initiated contact. He stated that what happened was "a lot of people's fault, not just mine." The defendant did state that he was remorseful and that he missed his family.

After hearing the evidence, the court sentenced the defendant for each conviction as follows: (1) four years, five years, and six years, respectively, for the three sexual battery by an authority figure convictions; (2) six years for each of the solicitation to commit rape convictions; (3) six years for each incest conviction; and (4) twelve years for each rape conviction. Thereafter, the court imposed partial consecutive sentencing based upon its classification of the offenses into groups, resulting in an effective sentence of forty-eight years. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant raises only the issue of sentencing for this court's review. Specifically, he contends that the trial court erred by not imposing the minimum sentence within the range and by imposing consecutive sentencing. When a defendant challenges a sentence, he or she bears the burden of demonstrating that the sentence is improper. T.C.A. § 40-35-401 (2010); *see also State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). Challenges made to length, range, or manner of service of a sentence are reviewed by appellate courts using a *de novo* review with a presumption of correctness. T.C.A. § 40-35-401(d); *see also State v. Franklin*, 308 S.W.2d 799, 825 (Tenn. 2010). This presumption of correctness, however, is conditioned upon an affirmative showing that the trial court applied and considered the relevant facts and circumstances and adhered to the proper sentencing principles. *Franklin*, 308 S.W.3d at 825; *Carter*, 254 S.W.3d at 344-45. When a trial court fails to meet these requirements, review is *de novo* with no presumption of correctness. *Franklin*, 308 S.W.3d at 825; *Carter*, 254 S.W.3d at 345.

In making its sentencing determinations, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific

sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties of the enhancement and mitigating factors; (6) any statistical information provided by the Administrative Office of the Courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. § 40-35-210(a), (b), -103(5) (2010).

As is now well established, our legislature amended our sentencing scheme in 2005, following the *Blakely* holding, to avoid possible constitutional violations arising from a trial court increasing a presumptive sentence on the basis of judicially-determined enhancement factors. *See Blakely v. Washington*, 542 U.S. 296 (2004) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The current statute no longer imposes a presumptive minimum sentence and allows a trial court to select any sentence within the applicable range so long as the length of the sentence is consistent with the purposes and principles of the Sentencing Act. *Carter*, 254 S.W.3d at 343. "Those purposes and principles include 'the imposition of a sentence justly deserved in relation to the seriousness of the offense,' a punishment sufficient 'to prevent crime and promote respect for the law,' and consideration of a defendant's 'potential or lack of potential for . . . rehabilitation.'" *Id*. (internal citations omitted).

Additionally, the amendments also rendered the application of the statutorily enumerated enhancement and mitigating factors as merely advisory and not binding on the court. *Id*. Nonetheless, trial courts must still "place on the record either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." T.C.A. § 40-35-210(e). Further, the amendments specifically omitted, as a ground for appeal, a claim that the trial court did not properly weigh the enhancing and mitigating factors. *Carter*, 254 S.W.3d at 344. Indeed, because the application of enhancement and mitigating factors is advisory, a trial court is free to sentence anywhere within the range regardless of the presence or absence of mitigating and enhancement factors. Thus, even if the trial court enhances a sentence based solely on factors other than statutory enhancement factors, such will not mandate reversal unless the consideration of those factors runs afoul of the principles of sentencing. *State v. Terry Wayne Hawkins*, No. E2009-00044-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Mar. 24, 2010). Because of the great discretion given to the trial court in determining sentence length pursuant to these amendments, appellate courts are left with a much narrower set of circumstances in which they may conclude that a trial court has abused

its discretion in determining the length of a sentence. *Carter*, 254 S.W.3d at 345.

## I. Length of Sentences

First, the defendant contends that the trial court erred by not imposing the minimum sentence within the range for each count. Specifically, he contends that the trial court gave too much weight to the enhancement factors and failed to give proper credence and consideration to mitigating evidence which was presented. He asserts that his lack of a prior record, his work history, and his involvement with the community and his church supported the minimum sentence within the range. He further relies upon the psychosexual evaluation, which indicated that he was at low risk to reoffend.

In imposing the sentences in this case, the trial court made very detailed findings on the record. The court noted that it was considering all the required principles of sentencing and noted the law as set forth in *Carter*, namely that the court was free to select any sentence within the applicable range so long as the length of the sentence was consistent with the purposes and principles of the Sentencing Act. The court then stated:

> Those purposes and principles included the imposition of a sentence justly deserved in relation to the seriousness of the offense, a punishment sufficient to prevent crime and promote respect for the law, and consideration of a defendant's potential or lack of potential for rehabilitation.
>
> I find that those three points absolutely describe the sentencing issues in this case.
>
> . . . .
>
> So that is the basis upon which I will now impose sentences in this case. I consider now these enhancement factors as guidelines. The enhancement factors that apply for sexual abuse of an authority figure, I find clearly and place heavy weight on Factor No. 4, that the victim of the offense was particularly vulnerable because of age. She was only 14 at the time. She was the only one at home. She was vulnerable to his acts of abuse and threats and especially on reporting and monetary threats to the house. I place great weight on that factor, and that particular crime.
>
> For solicitation of rape, I find two enhancement factors that I was to seriously consider. Number 7, the offense involved a victim and was committed to gratify the desire for pleasure or excitement. You remember the

testimony that he was horny. He talked about porno movies, and he wanted to make money from the porno movies using his stepdaughter.

Number 14, he abused a position of public or private trust as a stepfather. So I find - - weigh heavily on those two statutory factors.

On incest, I find clearly Number 7, the offense involved the victim and was committed to gratify the defendant's desire for pleasure and excitement. Also Number 14, he abused a position of private trust.

Rape, I find two enhancement factors. The offense involved a victim that was committed to gratify his desire for pleasure or excitement. Number 14, he abused a position of private trust.

I also find that in each and every one of these crimes that there must a sentence justly deserved in relation to the seriousness of the offense. There must be a punishment sufficient to prevent crime and to promote respect for the law.

And the defendant's potential or lack of potential, I find that his potential . . . for rehabilitation is very slim, and I will elaborate on that further.

So I want to impose the following sentences. Counts 1, 2, and 3 - - and pardon me because it does get complicated - - these are . . . sexual battery by an authority figure. The range is 3 to 6 and at 30 percent. I impose a sentence of 4 years at 30 percent on count 1; 5 years at 30 percent on count 2; 6 years at 30 percent on count 3.

Counts 25 and 39, solicitation to rape. I elaborated two enhancement factors that I place great weigh on. The facts in this case are incredible. The abuse is phenomenal. The impact and the danger - - or the damages to the victim is incredible. And these two counts happened later on in the process, and I find that the maximum sentence for these two crimes are appropriate. On count 25, 6 years at 30 percent; count 38, 6 years at 30 percent.

Incest, I will not go over all the counts on incest at this time, but I find that there is at least one enhancement factor that I've elaborated on and the circumstances are so oppressive, the circumstances are so phenomenal and great that the maximum sentence must be imposed in each and every incest case. And the sentence for each count of incest is 6 years at 30 percent.

-6-

Lastly, the crime of rape. I have stated that this is a 100 percent crime. The range of punishment is 8 to 12 years. I have found two enhancement factors and I have stated into the record the factors from the *Carter* case that I find that apply. And I feel that the only sentence that can apply under these facts and circumstances and all the evidence is the maximum sentence. Each count of rape, the defendant will be sentenced to 12 years at 100 percent.

Now, the issue as to whether or not the defendant should have any of the nonprobatable crimes probated I will address next. I find that all of these sentences are to serve in the state penitentiary.

In looking at probation, there are many things to consider, social history, mental condition, his physical condition. His social condition is poor. He had three ex-wives. After this investigation he lived with another lady. And between wife two and three, he had another girlfriend who testified here today.

His employment was poor. He declared bankruptcy. On the last three jobs in his presentence report it stated abandoned, abandoned, resigned.

And then we get to an issue for probation about the possibility of rehabilitation, and I just kind of want to share with you some pertinent parts of this psychosexual evaluation. It appears to me that [the defendant] has no appreciation for the truth. He told Dr. Moore that he pulled back the covers and discovered that she was masturbating and he said he could see her by the light of the telephone. He alleged that she asked, what do you want in a provocative manner before she reached out and grabbed his erect penis and masturbated him. He admitted he did digitally penetrate her for about 30 seconds and rubbed her clit until she had an orgasm.

Now in open court, in an attempt to mitigate his responsibility, the story of his life, he says that that happened, but there was no penetration. If true - - if this is true, . . . you are the man that you hold yourself out to be and you have the beliefs that you say you believe, why in the world did you not go to your wife and say we have a problem; why did you not go to your pastor or Sunday school teacher; why did you not go to your friends; why did you not address this?

Also, it goes on to say he was unable to provide any explanation for his conduct. He stated that he was not having a sexually satisfying relationship

with his wife. He promised her he would not have an affair and was not going to go outside the house.

Well, that's really something. At least you limited your abuse, your cheating, your affair to inside the house.

You indicated that your stepdaughter was built and walked around the house wearing only panties. You stated - - or she stated in this report, personality testing suggested that [the defendant] was trying to create a favorable impression of hisself. Exactly what you were trying to do when you testified today.

He engaged in impression management which was a naive attempt at seeming to have no problems. This is commonly seen in persons who are denying, defensive, and repressing the truth of events. Persons who respond in this manner lack insight to their actions and fail to appreciate the consequences for their behavior for others. They are unoriginal in their thinking and problem-solving and have a poor tolerance for stress and pressure. Personality testing suggested that [the defendant] uses denial excessively and is defensive about his actions. He lacks insight to his behavior and has no appreciation for the consequences of his conduct for the others. Very, very sad.

[The defendant's] preference for an available victim over an extended period of time suggests pervasive sexual disorder, [hebaphilia], and likely underestimates his risks according to actuarial methods of assessment. [The defendant] will remain at risk despite any treatment interventions and should be monitored regarding his contact around children.

Lastly, due to his present level of insight and poor judgment regarding minors, it is recommended that [the defendant] have no contact with children under the age of 18 unless they are under responsible adult supervision that is approved by his primary mental health therapist. . . .

For this reason, for the circumstances and nature of the conduct that he is now convicted of, I find that probation is inappropriate for [these convictions].

After reviewing the record and the highly detailed findings by the trial court, we are unable to give credence to the defendant's argument that the court imposed sentences in

error. Again, his argument appears to center around an assertion that the court improperly weighed enhancement factors and failed to consider mitigation evidence which was presented. With regard to the weight given to enhancement factors, as previously noted, *Carter* expressly stated that this is not an issue which is reviewable on appeal. Our review reveals that the trial court's application of the enhancement factors was not improper under the law and, as such, we are unable to further review the weight which the court assigned to them.

The defendant also complains that the court failed to apply the catchall mitigating factor based upon his lack of a prior record, his work history, church and community activities, and the finding in the psychosexual evaluation that he was at a low risk to reoffend. While the court did not specifically address a finding of any specific mitigating factors which were applicable, it is clear from a reading of the findings that each of the defendant's alleged claims of "mitigation evidence" was considered and rejected by the trial court. The trial court referenced the defendant's poor social history, his three marriages, his prior bankruptcy, and his work history. A reading of the findings clearly reveals that the trial court did not consider any of these factors to warrant mitigation. Rather, the trial court found nothing positive in these regards.

Additionally, the court gave a great deal of consideration to the psychosexual evaluation, which the defendant also argues supports a mitigated sentence. We are hard-pressed to give this argument any credence. In light of Dr. Moore's testimony and report, to rely upon the argument that the defendant was classified as a "low risk to reoffend" is rather absurd. A true reading of the report, as well as the testimony of Dr. Moore, leads to a completely different conclusion. The report contains the information that the defendant repeatedly lied to skew the results of the testing and attempted to make himself look better. The final conclusion, while technically classified as low risk, is that, given the proper circumstances, this could easily occur again and in no way entitles him to a mitigated sentence. Moreover, the defendant still refuses to accept responsibility for his actions, only admitting to one incident and maintaining it was the victim's fault.

We, thus, conclude that it was not error for the trial court to refuse to apply any mitigating factors in this case. The defendant is not entitled to relief on this issue.

## II. Consecutive Sentencing

Next, the defendant challenges the trial court's imposition of consecutive sentencing. His contention is that "the trial court committed error by creating arbitrary groups involving digital penetration, oral sex, and insertion of the vibrator." He contends that creating such groups and then ordering the groups to be served consecutively is capricious and arbitrary.

The imposition of consecutive sentencing is in the discretion of the trial court. *State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). A trial court may impose consecutive sentences upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. As relevant here, the statute permits imposition of consecutive sentences if the court finds by a preponderance of the evidence that:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of [the] defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of residual, physical and mental damage to the victim or victims[.]

T.C.A. § 40-35-115(b)(5) (2010).

The trial court, in imposing consecutive sentencing in this case, again made extensive findings on the record:

> The law makes it clear if the defendant is convicted of two or more statutory offenses involving sexual abuse of a minor, I must give consideration if I sentence consecutively to the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.
>
> I find that there are aggravating circumstances arising from the relationship between the defendant and the victim in this case, stepfather, stepdaughter. The defendant married [the victim's] mother in 2000 when she was eight. . . . She called you Daddy. She looked at you as a father figure. And I just can tell you, . . ., that this relationship is one of the most important relationships in life. It's essential and it's essential to the family.
>
> . . . .
>
> Joe White, Dr. Joe White wrote, the relationship between the parent and child travels in three vehicles of communication, words spoken, experiences shared, touches appropriately shared.

You have abused all of these vehicles of communication by your threats, by the reporting, the experience you shared and the touches. Touches, your hands are instruments of grace with a daughter. Your hands are messengers of trust with a daughter. Your hands are expressions of care with a daughter. Your hands can heal your daughter. Your hands can hold your daughter's hand. They are not instruments to hurt. They are not instruments to abuse.

Aggravated circumstances arising from this relationship, we have a family unit utterly destroyed by what you did. Your wife is damaged for years. Your stepdaughter is damaged for years and maybe for generations. Do you remember the testimony of your stepdaughter today? She said, why me? Why me? You've ruined a family. . . . [Y]ou cannot place a value on the destruction of a family unit. It will go on for generations. That first factor is met.

Second, the timespan of the defendant's undetected sexual activity, what are the aggravating circumstances surrounding that? The timespan in the indictment is from September of 2005, when the victim was 14, to May 2007, when she was 16. 20 months, 20 months between the age of 14 and 16 and . . . you admitted to Mr. Kent Elmer that it had gone on for years. You conveniently denied that today.

I find that there are aggravating circumstances from the nature and scope of the sexual acts you committed. It started out with fondling, then digital penetration. You watched pornography with her. You asked her to make a pornographic movie. You told her that there would be good money. You solicited oral sex on yourself. Your made her shave her pubic area. You asked her to do something with Brittany so [you] could watch. You had oral sex on her and, lastly, you used that vibrator to penetrate her vaginal area.

Fourthly, aggravating circumstances about the extent of the residual physical and mental damage to the victim, it can't be measured. . . . Not only are we dealing with the pain from the digital penetration by a stepfather at age 14, we're dealing with pain from the vibrator. You remember the bleeding. You remember the pain from the sexual act on her while she had a tampon in her vagina, and the tampon stayed in her body for several weeks because of what you did.

When she was 14 her mother began to notice attitude problems. After

the disclosure she couldn't go back into her bedroom for a while. They had to break the lease. They had to leave. She's had counseling at the Babb Center, Ashley's Place, Hendersonville High School, and Long Hollow Baptist Church. I cannot imagine the mental abuse. Her grades fell.

And Ms. Lilly testified today from the Babb Center this changed her entire life. She now has serious anxiety and depression disorder. She had panic attacks in public places, sometimes when she's out on a band field playing her instruments. Before this trial she was sensitive to touches, places in the home, smells, sights.

Her relationship with her little sister has been altered. She's been blamed for what you did and you won't take responsibility for. She tried to protect her sister. She's going to need counseling for a long time. She now suffers from damage from trust issues, intimacy issues. By the grace of God, she is doing a good job recovering, something that you have had nothing to do with. You are the reason for that.

So I find that all four factors in this consecutive sentencing process for child sexual crimes are present and I've elaborated them on the record, and I find that consecutive sentencing is necessary.

Nothing in our review of the record indicates that any of the trial court's findings were an abuse of discretion by the trial court. Rather, the record is replete with support for the trial court's determinations. Indeed, the defendant himself does not challenge the trial court's finding of the necessary aggravating factors to impose consecutive sentencing based on multiple sex crime convictions. He simply argues that the trial court's grouping of the offenses by type and then ordering the various types to run consecutively is arbitrary and capricious. We cannot agree with this argument.

It is clear from the record that the trial court grouped these offenses based upon the increasing severity and invasiveness of the defendant's sexual acts against the victim. That in no way reflects an arbitrary decision by the court. The trial court deftly expressed its reasoning for the imposition of these terms and clearly considered whether the aggregate length of the sentence was justly deserved in relation to the seriousness of the offenses. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). We can reach no other decision in this case but that the trial court's actions comport with the purposes and principles of consecutive sentencing. No abuse of discretion was established.

## CONCLUSION

Based upon the foregoing, the sentences imposed by the Sumner County Criminal Court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE