IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 26, 2011

**STATE OF TENNESSEE v. LARRY E. RATHBONE**

**Direct Appeal from the Criminal Court for Campbell County**
**No. 12534      E. Shayne Sexton, Judge**

**No. E2011-01269-CCA-R3-CD - Filed June 26, 2012**

The appellant, Larry E. Rathbone, was convicted of two counts of rape of a child, one count of aggravated sexual battery, and one count of attempted rape of a child. He received a total effective sentence of fifty-six years. On appeal, the appellant challenges the imposition of consecutive sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. JERRY L. SMITH, J., not participating.

Robert W. Scott, Jacksboro, Tennessee, for the appellant, Larry E. Rathbone.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; William Paul Phillips, District Attorney General; and Scarlett Wynne Ellis, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I.  Factual Background**

The appellant previously appealed to this court, challenging the sufficiency of the evidence supporting his convictions and the sentences imposed by the trial court. This court summarized the proof at trial as follows:

The victim, C.R., who is the son of [the appellant], was first

called to testify.[1] When C.R. took the stand, however, he began to cry and was unable to answer any questions. At this time, the state prosecutor requested a recess, which the trial court granted. After the recess, C.R. returned to the stand and testified that he was ten years old and presently lived with his "Mamaw and Papaw." C.R. acknowledged that he knew the difference between a good touch and a bad touch. C.R. explained that a bad touch is one on his "middle" or "private." C.R. was shown a sketch drawing of a boy and he indicated on the drawing where the "middle" or "private" was located. He also indicated on the drawing where the "butt" was located.

C.R. testified that his dad, [the appellant], gave him a bad touch on his private. C.R. recalled that [the appellant] pulled down his pants while they were on the couch in the living room. [The appellant] then put his mouth on C.R.'s private and moved his head up and down. C.R. recalled that his younger brother and Defendant Fleeman were present. C.R. said "no," when asked if Defendant Fleeman said or did anything when the touching occurred. C.R. could not recall exactly when the touching happened.

C.R. testified that there was a mattress in the living room of [the appellant's] house that [C.R.] occasionally slept on. He would also watch movies while on the mattress. C.R. recalled that on three occasions he watched movies with [the appellant,] Fleeman[,] and his younger brother which involved men and women and privates. When asked if [the appellant] gave C.R. a bad touch in the bedroom, C.R. responded "Yeah." C.R. then elaborated that [the appellant] touched [C.R.'s] private with his mouth on a mattress on the floor of the bedroom. C.R. said that [the appellant's] mouth went up and down on his private. According to C.R., [the appellant] and his younger brother witnessed this touching; and at the time, Defendant Fleeman was letting C.R.'s younger brother touch her private.

C.R. testified that on one occasion in the living room, [the appellant] tried to put his private in C.R.'s butt. C.R.

---

[1]It is the policy of this court to refer to minor victims of sexual crimes by their initials.

recalled that [the appellant] took his clothes off and C.R.'s clothes off. When asked how he was positioned, C.R. responded that his "front was on [the couch] and [his] back side was up . . . pointing up." According to C.R., Defendant Fleeman was naked and sitting on the couch when it happened. C.R. said that [the appellant] did not put his private in C.R.'s butt. C.R. said he did not know why. When asked if he had ever touched [the appellant's] private, C.R. responded, "Yeah." C.R. acknowledged that he touched [the appellant's] private with his hand on the mattress in the living room, and Defendant Fleeman and his younger brother saw it happen.

C.R. testified that he saw Defendant Fleeman's private on a number of occasions. On one occasion, he touched Defendant Fleeman's private with his private. C.R. recalled that Defendant Fleeman put her private on his private and "[w]ent up and down." According to C.R., this occurred in the living room on the mattress while he was naked and [the appellant] watched.

C.R. testified that [the appellant] told him not to tell, otherwise, he would go to jail. C.R. said that Defendant Fleeman also told him not to tell anyone. C.R. explained that his younger brother told his mom what happened after they got back from visiting their dad. When his mom asked him about it, he did not say anything at first, but he eventually told his mom what happened.

On cross-examination, C.R. said he could not remember what he talked about during the recess. He acknowledged that he told a police officer that [the appellant] had tried to put his penis in C.R.'s butt four times, which differed from his present testimony at trial. C.R. could not remember if he told the officer about [the appellant] putting his mouth on C.R.'s penis. C.R. stated that he visited [the appellant] often and that he loved him. C.R. acknowledged that he had testified at a previous hearing that he wanted to live with [the appellant] and that nothing had happened. C.R. acknowledged that he had trouble remembering things. He also noted that [the appellant] and Fleeman gave him insulin shots. He admitted that he got into trouble for stealing a bike when he was eight years old.

C.R.'s mother, June Wilson, testified that C.R was the oldest of her three children. She noted that [the appellant] was the father of her children. Mrs. Wilson recounted that she was married to [the appellant] for nine years but they got a divorce about four years ago. As part of the divorce, Mrs. Wilson got custody of the children and [the appellant] got visitation every other weekend and alternating holidays. According to Mrs. Wilson, her two boys went to visit [the appellant] on Friday evening, December 10, 2004, but her daughter did not go. Mrs. Wilson explained that sometimes her daughter would not go visit [the appellant] on the weekends. Mrs. Wilson recalled that after the boys last visit, she filed a police report against [the appellant] because of something her younger son said. Subsequently, C.R. was interviewed by Police Officer Donnie Anderson of the Campbell County Sheriff's Department with Mrs. Wilson present. Mrs. Wilson noted that C.R. was nine-years-old at the time.

[The appellant] testified on his own behalf. He testified that he had been divorced from Mrs. Wilson for about three-and-one-half years. After his divorce, he and Mrs. Wilson agreed to a custody arrangement where she would have custody of their three children, and he would have visitation every other weekend and alternating holidays. This visitation arrangement was consistently maintained after the divorce. [The appellant] recounted that in November and December of 2004, he was living in a three bedroom, mobile home on Massachusetts Avenue with his girlfriend of two years, Defendant Fleeman. According to [the appellant], all of his children would usually visit him on the weekends. [The appellant] recalled that he had visitation on the weekend after Thanksgiving in November of 2004. However, only his two boys came to visit that weekend. [The appellant] claimed that all of his children came to visit with him the first weekend in December 2004. [The appellant] also noted that Defendant Fleeman had a ten-year-old son who would visit them, and sometimes those visits would coincide with the visits from his three children.

[The appellant] testified that the mobile home he lived in had three bedrooms but one of the bedrooms was eliminated to

-4-

make a bathroom larger. [The appellant] explained that when his children visited him, Defendant Fleeman slept on a mattress in the living room, he slept on the couch or the mattress in the living room, and his children slept in the bedrooms. However, sometimes his children would cry and ask to sleep on the mattress in the living room, and he would let them. [The appellant] recalled that he and Defendant Fleeman usually wore clothes to bed, but on occasion they did not.

[The appellant] denied that he sexually abused C.R. He maintained that he did not put his mouth on C.R.'s penis, or that he made C.R. touch his penis, or that he tried to put his penis in C.R.'s butt. He also maintained that he never made C.R. take off his clothes or expose himself to Defendant Fleeman. He further maintained that Defendant Fleeman was never naked in front of C.R. or touched C.R., as claimed. [The appellant] asserted that he never watched pornographic movies with his children present. However, he acknowledged that he had three pornographic movies in his home. He also recalled that one time he woke up one morning and found his children watching a pornographic movie he had left in the DVD player the night before. [The appellant] said that his children only saw a few seconds of the movie before he turned the television off. [The appellant] stated that he loved his son and would never hurt him. According to [the appellant], he was not made aware of the accusations against him until he called on Christmas Eve to see if the children were ready to be picked up for a weekend visit.

Defendant Fleeman testified that she was twenty-nine years old and had a ten-year-old son who would come to visit on the weekends. She stated that she had been living with [the appellant] for two years. Defendant Fleeman asserted that she had never been naked around C.R., and she had never laid naked on top of him or rubbed up and down on his body. She also maintained that she had never witnessed [the appellant] engage in any sexual act with C.R. Defendant Fleeman stated that the children were not exposed to any sexual acts between herself and [the appellant] unless the children happened to have left their bedrooms at night and saw them in the living room having sexual intercourse. Defendant Fleeman said that she and [the

appellant] never watched pornographic movies with the children. Defendant Fleeman stated that she loved the children and did not do the things C.R. testified to. Defendant Fleeman acknowledged that on a few occasions, she gave C.R. and his younger brother a bath, but normally, they would bathe themselves.

Based upon the foregoing proof, [the appellant] was found guilty of two counts of rape of a child[, a Class A felony,] as reflected in counts 1 and 3 of the indictment, three counts of aggravated sexual battery[, a Class B felony,] as reflected in counts 2, 4, and 6 of the indictment; and one count of attempted rape of a child[, a Class B felony,] as reflected in count 5 of the indictment.

State v. Larry E. Rathbone and Veronda Gean Fleeman, No. E2007-00602-CCA-R3-CD, 2008 WL 1744581, at **1-4 (Tenn. Crim. App. at Knoxville, Apr. 16, 2008). The trial court imposed consecutive sentences of twenty-three years for each rape of a child conviction. Additionally, the trial court imposed a sentence of ten years for the attempted rape of a child conviction and ten years for the aggravated sexual battery conviction, with the sentences to be served concurrently to each other but consecutively to the rape of a child sentences, for a total effective sentence of fifty-six years. See id. at *13.

On direct appeal, this court merged the appellant's "aggravated sexual battery convictions reflected in counts 2 and 4 of the indictment with the [appellant's] child rape convictions in counts 1 and 3 of the indictment." See id. at *6. Additionally, this court remanded the case because the trial court failed to place on the record its findings of fact supporting the imposition of consecutive sentencing. Id. at *16.

On remand, the trial court held another sentencing hearing at which there was no additional testimony, but both parties made arguments concerning consecutive sentencing. Following argument, the trial court took the matter under advisement. Thereafter, the court again entered an order imposing consecutive sentencing for an effective fifty-six-year sentence; in its order, the trial court stated that the victim suffered substantial mental and emotional damage as a result of the appellant's crimes. On appeal, the appellant challenges the imposition of consecutive sentencing.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo.

See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. The trial court may impose consecutive sentencing upon finding the existence of any one of the criteria. In the instant case, the trial court imposed consecutive sentencing upon finding that the appellant was

> convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of [appellant's] undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5).

The record reveals that at the first sentencing hearing, three members of co-defendant Fleeman's family testified about the good relationship between the appellant, Fleeman, and the appellant's children. The appellant, his mother, and his aunt testified that the appellant was a good father. The appellant's mother and aunt expressed their disbelief in the appellant's guilt. The appellant denied committing the offenses and asked for leniency. Neither the victim nor his mother testified at the hearing. However, the victim's mother submitted a victim impact statement, stating:

All of our li[v]es have changed. [The victim] has nightmares almost every night. He cr[ies] a lot. They miss th[eir] father and the life they used to have. Now we watch every move they make[. W]e don't leave them alone with anyone[,] not even family[,] afraid that this could happen again. . . . The children need th[e]rapy and will need it for a long time.

Regarding consecutive sentencing, the State observed that "the victim impact statement filed by the mother [stated] that [the victim] would require counseling for some time." The State asked the trial court to consider "[t]he demeanor of [the victim] at trial, the difficulty he had and all that." The State contended that the diabetic victim was especially vulnerable, noting that he depended on the appellant to supply and administer shots and to provide for his dietary restrictions. The State further maintained that the appellant, as the victim's father, abused his position of trust. The State asserted that the abuse was undetected for a period of time, arguing that the victim often visited the appellant on weekends and that the victim did not report the abuse, due at least partially to the appellant telling the victim that the appellant would go to jail if the victim disclosed the abuse. The State argued that the offenses were exacerbated by the varied methods of sexual abuse perpetrated by the appellant, namely oral sex, attempted anal penetration, digital stimulation, and the watching of pornographic movies.

The appellant argued that the time span in which the offenses went undetected was not especially lengthy, that there was no evidence of mental or physical injury to the victim, that the victim was not especially vulnerable due to his medical condition, and that the acts described in the instant case were "the ordinary sexual acts that we hear in all these cases." We agree with the State.

The trial court again imposed consecutive sentencing, finding that the victim suffered substantial mental and emotional damage as a result of the appellant's crimes. The trial court stated that it had watched the victim "attempt to testify, finally and ultimately giving sufficient evidence to support a guilty verdict. I know that we'll all be – the family in particular will be suffering through this case. [The victim] will be suffering, I bet, longer than anybody. He will . . . pay a price that no one else will pay." The trial court "heard the testimony and viewed the witnesses" and was therefore "in a superior position to [this] appellate court to make . . . findings" regarding the mental and emotional injuries to the victim. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000); see also State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). As the record reflects, the victim had substantial difficulty testifying about the abuse, and, as his mother stated, had nightmares and needed counseling. Moreover, the trial court agreed with the State's arguments, especially regarding the aggravating circumstance of the appellant's abusing his position of trust as the father of

a medically vulnerable son.  Accordingly, the record sufficiently supports the application of consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(5) due to the appellant's convictions for two or more statutory offenses involving sexual abuse of a minor, with consideration of the circumstances surrounding the offenses and the extent of the residual, physical and mental damage to the victim.

### III.  Conclusion

In sum, we conclude that the evidence in the record supports the trial court's imposition of consecutive sentencing.

_____
NORMA McGEE OGLE, JUDGE