# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 7, 2011

## STATE OF TENNESSEE v. RICKY RONELL JONES

### Direct Appeal from the Circuit Court for Madison County
### No. 09-636    Donald H. Allen, Judge

### No. W2010-01831-CCA-R3-CD  - Filed August 30, 2011

The appellant, Ricky Ronell Jones, pled guilty to rape, incest, and two counts of sexual battery relating to his eldest daughter and was convicted at trial of rape of a child and incest relating to his youngest daughter. He received a total effective sentence of thirty-seven years in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions and the imposition of consecutive sentencing. Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Ricky Ronell Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; James G. Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The appellant was indicted for incest, rape, and sexual battery of his fifteen-year-old daughter, B.J.[1] He was also indicted for incest, rape of a child, and sexual battery of his twelve-year-old daughter, L.J. Prior to trial, the appellant pled guilty to the offenses

---

[1] It is the policy of this court to refer to minor victims of sexual crimes by their initials.

involving B.J., with the trial court to determine the length and manner of sentencing. However, he chose to go to trial on the charges involving L.J.[2]

At trial, L.J. testified that she was born on August 19, 1996, and was twelve years old at the time of the offenses. She said that she had an older sister, B.J., and an eighteen-year-old brother. She said that the appellant was her father.

L.J. stated that in 2008, she lived with her siblings, her mother, and the appellant in Jackson. In May or June, about two or three months before her twelfth birthday, L.J. was at home with B.J. and the appellant while her mother and brother were at work. L.J. was in her bedroom watching television, and B.J. was in her bedroom. The appellant called L.J. to her parents' bedroom. When she walked into the bedroom, the appellant was sitting on the bed. He was wearing a shirt, but his pants were down. He told L.J. to put his penis in her mouth. L.J. said that she sat on the bed, and the appellant put his penis inside her mouth. After one or two minutes of moving his penis "back and forth" in L.J.'s mouth, the appellant stopped, walked away, and went into the laundry room. L.J. stated that afterward, she went to her bedroom. L.J. said that her mother got home late from work that night and that she did not tell her mother what happened at that time.

L.J. stated that sometime after the incident, she was in a room with B.J., her mother, and her aunt, the appellant's sister, Stephanie Reid. L.J.'s mother asked L.J. if the appellant had "done anything" to her. At first, because she was scared, L.J. said that nothing had happened. However, later, when she was alone with her mother, L.J. disclosed the details of the incident in her parents' bedroom. Thereafter, in January 2009, L.J. told Investigator Jones about the incident.

B.J. testified that she was born on March 10, 1994. She said that in the summer of 2008, she was at home with L.J. and the appellant while her mother and brother were at work. B.J. said that she was on the family computer in her parents' bedroom. The appellant was also in the room. B.J. left to go to the bathroom and heard the appellant call L.J. into the bedroom. When B.J. went to the bathroom, she left the door to her parents' bedroom open, but when she returned, the door was closed. B.J. opened the door "a little" and saw the appellant and L.J. in the bedroom. She said that the appellant's penis was in L.J.'s mouth. B.J. said that seeing the appellant molest L.J. made her angry. B.J. closed the door and went to her bedroom. At that time, she did not tell anyone what she witnessed. However, she later told Investigator Jones about the incident.

Deputy William Alan Kirby testified that on January 8, 2009, he was working in

---

[2] The sexual battery charge regarding L.J. was dismissed by nolle prosequi prior to trial.

booking at the Madison County Sheriff's Department. The appellant was placed in a holding cell in the booking area because he had a problem with his eyeglasses and could not be placed with other inmates. Deputy Kirby was booking another person in the jail when he noticed that the appellant was attempting to put a blanket on the ceiling of his cell. Deputy Kirby alerted his supervisor and the jail nurse that the appellant was attempting to harm himself. Officers went in the appellant's cell and took the blanket from him.

While waiting for a crisis counselor to arrive, the appellant began to cry. Deputy Kirby asked if he could help the appellant. The appellant told Deputy Kirby that he was "feeling down because of what [he] did." Deputy Kirby asked what the appellant meant, and the appellant said he had done "something real bad." Deputy Kirby asked the appellant if he wanted to talk about it. The appellant told Deputy Kirby, "I touched my daughter. . . . I fondled my daughter, my twelve-year old daughter."

Danielle Jones, an investigator with the Jackson Police Department's Violent Crimes Unit, testified that on January 8, 2009, she spoke with L.J., B.J., and their mother at the police department about the incident. Investigator Jones said that the victims gave statements consistent with their in-court testimony.

Stephanie Reid, the appellant's sister, testified on behalf of the appellant. She said that on January 8, 2009, she went to the appellant's residence. L.J., B.J., their mother, their brother, and an officer were at the residence. Reid said that when L.J.'s mother asked L.J. questions about what happened, L.J. stated that the appellant "did nothing to [her]." The appellant, who was in another room at the time, was then arrested and taken to the police station. On cross-examination, Reid conceded that she was not present during any "private conversation[s]" L.J. had with her mother or Investigator Jones.

The thirty-eight-year-old appellant testified that he was the father of B.J., L.J., and their brother and that he was married to his children's mother. In February 2008, the appellant had a cornea transplant in his left eye, and he was blind in his right eye. He said that family members had to assist him around the house because of his vision problems. He said that he did not return to work after his surgery. His wife and son were employed, and the appellant stayed home to care for B.J. and L.J.

The appellant denied that he engaged in oral sex with L.J. The appellant said that L.J. and B.J. were not telling the truth about the incident. The appellant said that he did not recall having a conversation with Deputy Kirby about molesting his twelve-year-old daughter.

After hearing the foregoing proof, the jury convicted the appellant of rape of a child and incest. At the sentencing hearing, the trial court imposed an effective sentence of twelve

years for the offenses relating to B.J. and an effective sentence of twenty-five years for offenses involving L.J. The court ordered the sentences to be served consecutively for a total effective sentence of thirty-seven years.

## II. Analysis

### A. Sufficiency of the Evidence

First, the appellant challenges the sufficiency of the evidence supporting his convictions for rape of a child and the incest involving L.J. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 39-13-522(a) provides that rape of a child is the "unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." The definition of sexual penetration includes fellatio. Tenn. Code Ann. § 39-13-501(7). Incest occurs when a person "engages in sexual penetration . . . with a person, knowing such person to be, without regard to legitimacy . . . [t]he person's . . . child." Tenn. Code Ann. § 39-15-302(a)(1).

The appellant's sole complaint regarding the sufficiency of the evidence is that the defense witnesses were more credible than the State's witnesses. He contends that his denial that he engaged "in any type of illegal behavior" coupled with Reid's testimony that L.J. denied the allegation "should serve to reverse and dismiss Appellant's convictions." However, determining the credibility of witnesses is within the purview of the jury. See State v. Millsaps, 30 S.W.3d 364, 368 (Tenn. Crim. App. 2000) (stating that "the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier[ ] of fact"). In the instant case, the jury clearly resolved the issue of credibility in the State's favor. We may not now reconsider the jury's credibility assessment. See State v.

Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). At trial, the State elicited proof that the appellant was L.J.'s father and that L.J. was more than three years old but less than thirteen years old at the time of the offenses. B.J. and L.J. testified that the appellant placed his penis in L.J.'s mouth. Moreover, L.J. acknowledged that she initially denied the abuse, but she explained that she did so because she was "scared." L.J. testified that she disclosed the details of the abuse to her mother and to Investigator Jones. From the foregoing proof, we conclude that the State adduced sufficient evidence at trial to sustain the appellant's convictions.

## B. Consecutive Sentencing

Finally, the appellant challenges the trial court's imposition of consecutive sentencing. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Initially, we note that a transcript of the guilty plea hearing for the offenses relating to B.J. was not included in the record for our review. However, at the sentencing hearing the State recalled that during the plea hearing the State

> told the Court that [B.J.] was pregnant when this was discovered in January of last year. She was pregnant, fourteen at the time, and she did have an abortion, Your Honor. She was about a month, maybe a little bit more, a few days more than a month pregnant.

At the sentencing hearing, the appellant acknowledged that he pled guilty to the offenses relating to B.J. He further acknowledged that B.J. became pregnant and that DNA

testing revealed that he was the father of the child. The appellant denied that he had committed any sexual acts with L.J. "to the best of [his] knowledge." The appellant maintained that he "slipped off the deep end . . . and [he] got into taking [his] pain killers too excessively." The appellant said that he was "humble" and "remorseful" and apologized to his wife and daughters for hurting them.

B.J., L.J., and their mother submitted victim impact statements that were made part of the appellant's presentence report. L.J. reported that she suffered from "stress and depression and bad dreams" as a result of the appellant's abuse. She said that she did not understand how her father could hurt her and that she did not know if she could trust anyone again. B.J. wrote that she was "upset" and "stress[ed]." She said that she was depressed after terminating her pregnancy and was concerned that she might have problems having children in the future. B.J. said that she had nightmares and problems trusting men. The victims' mother said that she, L.J., and B.J. were all in counseling to deal with the aftermath of the abuse. She said that when B.J. learned she was pregnant with the appellant's child, "[s]he was devastated." The victims' mother said that because of "physical complications," the pregnancy was terminated.

At the conclusion of the sentencing hearing, the trial court imposed concurrent sentences of twelve years for the rape of B.J., six years for the incest involving B.J., and two years for the sexual battery of B.J. The court further sentenced the appellant to twenty-five years for the rape of a child, L.J., and to six years for the incest involving L.J., with the sentences to be served concurrently with each other but consecutively to the sentences for the offenses involving B.J. for a total effective sentence of thirty-seven years.

The appellant's sole complaint regarding sentencing is that the trial court erred in imposing consecutive sentencing. He contends that the twenty-five year sentence for rape of a child and the requirement that he serve one hundred percent of that sentence in confinement "would serve as an effective deterrent to others."

Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). In the instant case, the trial court imposed consecutive sentencing upon finding that the appellant was

> convicted of two (2) or more statutory offenses involving sexual
> abuse of a minor with consideration of the aggravating
> circumstances arising from the relationship between the

-6-

[appellant] and victim or victims, the time span of [appellant's] undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5).

Clearly, the appellant's convictions stem from the sexual abuse of his two minor daughters. The court stated that the victims trusted the appellant and that the appellant took advantage of the victims while their mother was at work. The trial court noted that both of the victims were "devastated" and "traumatized" by the appellant's abuse. The record reflects that the victims have nightmares and trouble sleeping. They, along with their mother, have undergone counseling. The court observed that B.J. endured additional physical and emotional pain as a result of the pregnancy. The court also noted that the acts occurred multiple times between May and December 2008. We conclude that the trial court did not err in ordering consecutive sentencing.

### III.  Conclusion

In sum, we conclude that the evidence was sufficient to sustain the appellant's convictions and that the imposition of consecutive sentencing was justified. Therefore, the judgments of the trial court are affirmed.

_____
NORMA McGEE OGLE, JUDGE