# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 14, 2011

## STATE OF TENNESSEE v. WILLIAM ALEXANDER GANT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-B-1371     Cheryl A. Blackburn, Judge**

**No. M2010-02104-CCA-R3-CD - Filed March 13, 2012**

A Davidson County Criminal Court jury found the appellant, William Alexander Gant, guilty of the sale of less than .5 grams of cocaine, tampering with evidence, and evading arrest. The trial court imposed a total effective sentence of fifteen years in the Tennessee Department of Correction, to be served consecutively to sentences from two prior convictions.  On appeal, the appellant contends that the evidence was insufficient to sustain his conviction for selling less than .5 grams of cocaine, that the trial court erred "in allowing the State to present proof derived from evidence that it intentionally destroyed," and that the trial court erred in sentencing.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Emma Rae Tennent (on appeal) and J. Michael Engle (at trial), Nashville, Tennessee, for the appellant, William Alexander Gant.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The State's proof at trial revealed that in March 2007, the Metropolitan Nashville Police Department's East Precinct Crime Suppression Unit was targeting "street level vice crimes."  The unit regularly utilized the services of confidential informants to make

purchases of narcotics. William Carroll, a confidential informant who had earlier been arrested for possession of drug paraphernalia and driving without a valid license, was working with the unit on March 7, 2007, and made a purchase from the appellant.

Immediately before Carroll left to make a purchase, Detective Michael Fisher searched Carroll and Carroll's vehicle and confirmed that Carroll possessed no contraband. Carroll was equipped with a device that allowed officers to listen to, but not record, transactions. Detective Fisher photocopied a twenty-dollar bill and gave it to Carroll to make a purchase. Thereafter, Carroll drove his vehicle to an area of Straightway Avenue that was known for "narcotic activity" to make a purchase of crack cocaine.

Around 5:30 p.m., Carroll saw one individual, a black male, on Straightway Avenue near Gallatin Road. Carroll asked the man if he was "working," which he explained was an inquiry as to whether the man had drugs for sale. When the man responded affirmatively, he and Carroll began negotiating whether the proffered rock of crack cocaine was worth ten or twenty dollars. Ultimately, Carroll agreed to pay twenty dollars for "a little rock" of crack cocaine.

During the transaction, Carroll did not look closely at the man's face because he was afraid of being identified as a confidential informant. However, as Carroll drove away from the transaction, he described the man's clothing to the officers. Carroll then drove to a church parking lot located one to two blocks away where he gave Detective Fisher a small, white rock substance that field tested positive for cocaine. The substance was sent to the Tennessee Bureau of Investigation (TBI) for testing, and the substance was confirmed to be .1 gram of crack cocaine.

The officers testified that they were unable to visually monitor the transaction, explaining that they could not park nearby because their faces and vehicles were well-known in that area. However, the officers maintained audio surveillance of the transaction via the listening device. Therefore, when Carroll left the scene and stated that the seller was wearing "a green jacket, blue jeans, and a ball cap," the officers immediately proceeded to the location where the transaction took place. Detective Chad Holman arrived five or ten seconds after Carroll left, and he saw only one individual, the appellant, walking down the street. The appellant's clothing matched the description of the seller's clothing. At that time, the officers arrested the appellant and cuffed his hands behind his back.

Detective Holman searched the appellant but was unable to locate the "buy money." The police conducted a search of the area to determine whether the appellant had discarded the cash. When the search proved fruitless, Detective Darryl Morton conducted a second search of the appellant. The appellant, who was wearing pajama pants underneath his blue

jeans, made "furtive movements" to keep Detective Morton away from his right side. Detective Morton undid the appellant's jeans and pulled the jeans down slightly. At that point, Detective Morton saw a twenty-dollar bill on the appellant's right thigh between the appellant's blue jeans and his pajama pants.

Detective Morton compared the cash with the photocopy of the "buy money." He confirmed that the bill was the one that had been given by Detective Fisher to Carroll. The officers then put the bill on the tailgate of an officer's Chevrolet Tahoe so that they could bag it as a potential "biohazard."

The appellant asked the officers if he could work for them as a confidential informant. When the appellant's offer was declined, the appellant walked toward the tailgate of the Tahoe. The appellant bent at the waist, picked up the buy money with his mouth, and started running away.

The appellant fell after proceeding about ten or fifteen feet. As the appellant was on the ground, Detective Holman and Detective Morton saw him chewing and swallowing. The officers apprehended the appellant, but they were unable to locate the buy money. The officers believed that the appellant swallowed the money. The officers did not retain a copy of the buy money. They explained that the photocopies were used solely to confirm that the bill had the same serial numbers as the bill given to Carroll and that the officers routinely destroyed the copies at the end of each day.

The appellant chose not to put on proof. Following the presentation of the foregoing evidence, the jury found the appellant guilty of the sale of less than .5 grams of cocaine, tampering with evidence, and evading arrest. For his convictions, the appellant received a total effective sentence of fifteen years, which was to be served consecutively to two prior sentences.

On appeal, the appellant contends that the evidence was insufficient to sustain his conviction for selling less than .5 grams of cocaine, that the trial court erred "in allowing the State to present proof derived from evidence that it intentionally destroyed," and that the trial court erred in sentencing.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to

this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant challenges his conviction for selling cocaine.[1] Tennessee Code Annotated section 39-17-417(a)(2) provides that it is an offense to knowingly sell a controlled substance. The offense is a Class C felony if it is less than .5 grams of any substance containing the Schedule II controlled substance cocaine. Tenn. Code Ann. § 39-17-417(c)(2)(A).

The appellant "specifically contends that the evidence presented at trial is insufficient as a matter of law to establish that the substance allegedly sold to the confidential informant contained cocaine." First, the appellant maintains that the proof at trial did not reflect that the substance tested and confirmed to be crack cocaine by the TBI was the substance obtained during the sale. Second, the appellant argues that the police officer's testimony concerning the field test does not meet the dictates of Tennessee Rule of Evidence 702. The appellant's arguments are unavailing.

To support his first argument, the appellant notes that Detective Fisher recovered a "small white rock substance" from Carroll following the transaction and that Detective Holman found "an additional smaller piece of white rock substance" during a search of the appellant after his arrest. The appellant contends that the substances "were submitted together" for testing and that TBI Agent Scott could not definitively say that the substance he tested was the substance obtained during the transaction. However, the form the TBI received from the police department reflects that the two substances submitted for testing were a "white rock substance .1 gm" that was found at "1113 Straightway Ave[nue]," which was the substance obtained by Carroll, and a "white rock substance .05 gm" that was found on the appellant's person. The TBI report reflects that the "[r]ock-like substance" that weighed .1 gram was cocaine base. Agent Scott confirmed that two rocks were submitted,

_____

[1] The appellant does not challenge the sufficiency of the evidence supporting his other two convictions.

one larger than the other, and that he conducted his tests on the larger of the two rocks. He further noted that an even smaller rock was found stuck to the envelope but that he did not test that substance. Although there were "four little pieces of rock like substance" in the evidence bag at trial, Agent Scott explained that because of the nature of the substance, "it can be broken up in shipping from one place to another." We conclude that, from this proof, the jury could have determined that the substance tested by Agent Scott, the larger rock, was the substance sold by the appellant to Carroll.

The appellant also contends that Detective Fisher's testimony regarding his field test of the substance obtained by Carroll "cannot provide a basis for the jury to conclude beyond a reasonable doubt that the substance contained cocaine." This court has previously explained that "[w]hen the state elects not to offer an expert in drug analysis and relies *entirely* on the opinion of a law enforcement officer to establish the existence of a controlled substance through a field test, . . . the state must comply with the requirement of Rule 702, Tennessee Rules of Evidence." State v. Mikel Primm, No. 01C01-9712-CC-00571, 1998 WL 849305, at *2 (Tenn. Crim. App. at Nashville, Dec. 9, 1998) (emphasis added). However, in the instant case, the State did not rely solely upon the testimony of the police regarding the results of the field test to establish that the substance sold by the appellant was cocaine. The TBI testing also confirmed that the substance was cocaine.

The proof at trial established that Carroll approached the appellant and asked if he was "working," which was an inquiry whether the appellant had drugs for sale. They negotiated a price of twenty dollars for a rock of crack cocaine. Carroll handed the appellant a twenty-dollar bill that had been previously photocopied by police; in exchange, the appellant handed Carroll the crack cocaine. After the sale, Carroll gave Detective Fisher the crack cocaine. Additionally, after arresting the appellant, the police found the previously photocopied "buy money" in the appellant's pants. The appellant subsequently ate the money in an attempt to destroy evidence. We conclude that the evidence was sufficient to sustain the appellant's conviction for the sale of cocaine.

### B. Admission of Testimony Regarding the "Buy Money"

The appellant also contends that the trial court should have "exclude[d] all police testimony concerning the comparison made between the $20 bill found on the [appellant] and the photocopy, and concerning the conclusion that the two items matched." The appellant maintains that "because the police intentionally destroyed the photocopy, . . . the State should not be allowed to profit from the intentional destruction of proof by presenting testimony about what that proof would have shown had the police preserved it." The appellant argues that the intentional destruction of evidence, namely the photocopy of the "buy money," violated his due process rights because "the State has a duty to preserve evidence that is

exculpatory, or at the least, material to the preparation of a . . . defense."

Initially, we note that the admissibility of evidence lies within the sound discretion of the trial court, and an appellate court will not interfere with the lower court's exercise of that discretion absent a clear showing of abuse. State v. Carruthers, 35 S.W.3d 516, 574 (Tenn. 2000). Further, the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. See Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001). As such, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to the defendant's guilt or innocence or to the potential punishment faced by a defendant. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

In State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), our supreme court addressed the issue of when a defendant is entitled to relief in the event the State has lost or destroyed evidence that was alleged to have been exculpatory. The court explained that a reviewing court must first determine whether the State had a duty to preserve the lost or destroyed evidence. Ferguson, 2 S.W.3d at 917. Ordinarily, "the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Id. However,

> "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

Ferguson, 2 S.W.3d at 917 (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)).

If the proof demonstrates the existence of a duty to preserve the evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

> 1. The degree of negligence involved;
>
> 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

-6-

3. The sufficiency of the other evidence used at trial to support the conviction.

Id. (footnote omitted).

At the hearing on the appellant's motion in limine on this issue, the following colloquy occurred:

> [Trial court]: . . . So you're wanting the State to not be able to talk about buy money because of why? Because [the appellant] ate it? . . . [I]t's kind of hard for the police to produce that.

> [Defense counsel]: No, I'm not asking for the police to produce it. . . . There are references made in the police reports . . . to previously photocop[ied] buy money. And presumably someone . . . is going to say that the presumed buy money that . . . [the appellant] ate was the same as that previously photocopied. . . . [T]he State has not produced that previous photocopy. And I don't believe they can or else they would have. . . .

> [Trial court]: . . . You don't want them to be able to talk about the buy money because, one, it was eaten and they can't show the one that was recovered or that because they don't have a photocopy they can't say what they did. Is that right?

> [Defense counsel]: They can't say that it matched, that it was identical.

> [Trial court]: Well, if they saw that it matched, that's their personal observations, which they can certainly testify to. . . . It sounds like great cross-examination to me. But I'm not going to prevent them from being able to say what they did and what they saw. I mean that's personal observation.

> . . . .

> [Defense counsel]: Your Honor, I think this is almost classical best evidence. The police were in possession of a

-7-

document. They intend to give oral testimony –

[Trial court]: Well, I have no proof that anybody destroyed that for the purpose of keeping you from finding it. What evidence do we have of that? None.

[Defense counsel]: I don't have any evidence. They destroyed it. This evidence doesn't exist. There will be evidence that [it] doesn't exist. . . .

[Trial court]: Okay. But the point of the matter is you can't keep people from testifying about what they personally observed. . . . Now, I mean, part of the problem here quite honestly is the fact that the allegation is that your client ate the money when it was recovered.

This court has recently addressed an issue almost identical to that raised by the appellant. In State v. Benjamin Patterson and Charles P. Yokley, No. M2009-01516-CCA-R3-CD, 2011 WL 4436630, at **8-9 (Tenn. Crim. App. at Nashville, Sept. 26, 2011), application for perm. to appeal filed, (Nov. 28, 2011), the defendants contended that the State violated their due process rights by failing to preserve as potentially exculpatory evidence the money used to purchase drugs or the photocopies of the money. This court noted that the defendants failed to "assert *how* the buy money or photocopies would have exculpated them." Id. at *9. Further, we cautioned that "'the mere possibility of exculpatory content does not trigger a finding that the State failed in its general duty to preserve evidence under Ferguson.'" Id. at *9 (quoting State v. Ronnie D. Sims, No. M2004-02491-CCA-R3-CD, 2005 WL 3132441, at *8 (Tenn. Crim. App. at Nashville, Sept. 21, 2005). The officers testified that the serial numbers of the buy money matched the photocopies and that the defendants had the money in their possession. Id. Additionally, this court noted that there was no indication in the record that the evidence would have been favorable to the defendants. Id. As such, we concluded that the defendants were not entitled to relief.

Likewise, in the instant case, the appellant makes, at best, a specious and speculative claim that he was entitled to inspect the photocopy because he then could have found "grounds to challenge [the] alleged 'match' in the field . . . [if the copy had been] blurry or otherwise difficult to accurately decipher in the waning daylight conditions that existed when the [appellant] was arrested." The trial court found that there was no proof the State destroyed the evidence for the purpose of keeping it from the defense or that the evidence was exculpatory. The trial court found that the officers could testify that, through their personal observations, they learned that the money found on the appellant matched the

photocopied money. We agree and conclude that the trial court did not err in permitting the introduction of this evidence.

## C. Sentencing

The appellant also contends that the trial court erred in sentencing. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

## 1. Length of Sentence

The appellant contends that the trial court erred in imposing the maximum sentences. In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the

statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). Moreover, "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 345-46.

The appellant, a Range III persistent offender, was subject to a sentence between ten and fifteen years for the Class C felonies of selling less than .5 grams of cocaine and tampering with evidence. The appellant's Class A misdemeanor conviction of evading arrest carried a sentence of eleven months and twenty-nine days.

At the sentencing hearing, the State submitted the appellant's presentence report, which reflected that the appellant had the requisite five prior felony convictions needed to establish his status as a Range III offender. See Tenn. Code Ann. § 40-35-107(a)(1). The trial court applied enhancement factor(1) because the appellant had at least thirty-seven prior misdemeanor convictions for offenses such as simple possession of drugs, possession of drug paraphernalia, assault, criminal impersonation, criminal trespass, and resisting arrest. See Tenn. Code Ann. § 40-35-114(1). The court further enhanced the appellant's sentences based upon evidence that the appellant had at least one prior probation revocation and that he was serving a probationary sentence and a community corrections sentence at the time the instant offenses were committed. See Tenn. Code Ann. § 40-35-114(8) and (13)(C) and (E). The trial court found in mitigation that the appellant's criminal conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). Ultimately, the trial court determined that the enhancement factors outweighed any mitigating factors and imposed a fifteen-year sentence for each Class C felony conviction and a sentence of eleven months and twenty-nine days for the Class A misdemeanor conviction.

The appellant does not dispute the applicability of the enhancement factors. Further, he "acknowledges that he is unable to contest the weight given to the enhancement factors found by the trial court." However, he contends "that an effective sentence of thirty-one (31) years is not 'the least severe measure necessary to achieve the purposes for which the sentence has been imposed' . . . and is 'greater than that deserved for the offense[s] committed." We disagree. Given the prolific nature of the appellant's prior criminal activity and the appellant's obvious failure to comply with the terms of release into the community,

we conclude that the trial court did not abuse its discretion by determining that the maximum sentences were warranted.

## 2. Consecutive Sentencing

Finally, the appellant argues that the trial court erred by ordering that the sentences be served consecutively to previously imposed sentences. Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). The trial court may impose consecutive sentencing upon finding the existence of any one of the criteria. In the instant case, the trial court found criterion (2), that the appellant was an offender whose record of criminal activity is extensive, and criterion (6), that the appellant was sentenced for an offense committed while on probation. Tenn. Code Ann. § 40-35-115(b)(2), (6).

As we stated earlier, the appellant committed the instant offenses while serving sentences of probation and community corrections. The presentence report reflects that on August 25, 2005, the appellant was convicted of selling cocaine and was given a six-year probationary sentence. On June 22, 2008, the probationary sentence was revoked, ostensibly because of the instant charges. Additionally, on January 18, 2007, the appellant was convicted of selling cocaine and received a six-year community corrections sentence that was revoked on June 22, 2007, again ostensibly because of the instant charges. The proof at the sentencing hearing indicates that these sentences were to be served concurrently. However, after the revocations, the trial court ordered that the community corrections sentence was to be increased to ten years, the six-year probationary sentence was to remain the same, and the two sentences were to run consecutively for a total effective sentence of sixteen years.

At the conclusion of the instant sentencing hearing, the trial court ordered that the appellant's fifteen-year sentences be served concurrently with each other. However, the trial court ordered the effective fifteen-year sentence to run consecutively to the previously imposed effective sixteen-year sentence.

Our review of the record reveals that the appellant was serving a probationary sentence at the time he committed the instant offenses. Additionally, as the trial court found, the appellant has an extensive criminal history. Accordingly, the trial court did not err in imposing consecutive sentencing.

## III. Conclusion

In sum, we conclude that the evidence was sufficient to support the appellant's conviction for selling cocaine, the trial court did not err in allowing the State to adduce proof about the "buy money," and the trial court did not err in sentencing. Therefore, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE