# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2012

## STATE OF TENNESSEE v. DAVID EUGENE BREEZEE

**Direct Appeal from the Circuit Court for Benton County**
**No. 10-CR-45      C. Creed McGinley, Judge**

---

**No. W2011-02186-CCA-R3-CD  - Filed December 26, 2012**

---

A Benton County Circuit Court Jury convicted the appellant, David Eugene Breezee, of rape of a child, a Class A felony, and incest, a Class C felony. After a sentencing hearing, the trial court merged the incest conviction into the rape of a child conviction and sentenced the appellant to twenty-five years in confinement. The sentence was to be served consecutively to a prior sentence. On appeal, the appellant contends that (1) the evidence is insufficient to support the convictions, (2) the trial court erred by refusing to allow him to question the victim about nude photographs taken of her by a registered sex offender, and (3) the trial court improperly ordered consecutive sentencing. The State argues that the trial court erred by merging the appellant's convictions. Based upon the record and the parties' briefs, we conclude that the evidence is sufficient to support the appellant's convictions, that the trial court did not err by refusing to allow the appellant to question the victim about nude photographs, and that the trial court did not err by ordering consecutive sentencing. However, the trial court erred by merging the appellant's convictions. Therefore, the appellant's incest conviction is reinstated, and the case is remanded to the trial court in order for the court to resentence the appellant for both offenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part, Reversed in Part, and the Case is Remanded**.

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROGER A. PAGE, JJ., joined.

Guy T. Wilkinson and Gary J. Swayne, Camden, Tennessee, for the appellant, David Eugene Breezee.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Hansel Jay McCadams, District Attorney General; and James E. Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual Background

Sergeant Ricky Pafford of the Benton County Sheriff's Department (BCSD) testified that on September 26, 2010, he and Cendy Curtis of the Department of Children's Services (DCS) went to a school in Big Sandy, Tennessee, to speak with the victim, who was the appellant's stepdaughter. Sergeant Pafford and Curtis were investigating "some inappropriate touching of a juvenile." They spoke with the victim, and she made allegations against the appellant. Later that day, Sergeant Pafford and Curtis spoke with the victim at the DCS building, and the victim gave a statement.

Sergeant Pafford testified that he and Curtis interviewed the appellant twice. The purpose of the first interview, which lasted three to four hours, was to learn about the dynamics of the victim's family. The purpose of the second interview, which also lasted three to four hours, was to discuss the victim's allegations. Sergeant Pafford said that when the appellant learned about the victim's claims, he acted "surprised, shocked." During the second interview, Sergeant Pafford wrote out questions for the appellant and wrote down the appellant's answers. One question asked, "Did you think when you were touching the girl that it would not hurt her[?]" The appellant answered, "I don't know what I was thinking." Another question asked, "You understand that what you done was breaking the law[?]" The appellant answered, "Yes. Touching a kid is breaking the law." At the conclusion of the appellant's second interview, he stated, "I don't know why I touched the girl." Sergeant Pafford said the appellant "got teary eyed" and acted relieved, so Sergeant Pafford considered the appellant's statement to be a confession.

On cross-examination, Sergeant Pafford testified that during the appellant's first interview, the appellant denied any wrongdoing. The first interview was not audio recorded. Sergeant Pafford tried to audio-record the second interview, but the recorder malfunctioned. Sergeant Pafford acknowledged that he did not write down the appellant's statement, "I don't know why I touched the girl." Sergeant Pafford arrested the appellant after the second interview.

Lieutenant Bryant Allen of the BCSD testified that during the appellant's second interview, Sergeant Pafford came to him and asked him to speak with the appellant because Sergeant Pafford "wasn't getting anywhere." Lieutenant Allen interviewed the appellant for about fifteen minutes while Sergeant Pafford took notes and wrote down the appellant's answers. At the conclusion of the interview, Lieutenant Allen asked the appellant why he had touched the victim. Lieutenant Allen said the appellant put his head down and stated, "I don't know why I touched the girl." The appellant then put his head in his hands and

sobbed.

On cross-examination, Lieutenant Allen acknowledged that he agreed to interview the appellant because the appellant was not telling Sergeant Pafford anything incriminating. He also acknowledged that Sergeant Pafford should have written down that the appellant said, "I don't know why I touched the girl."

Cendy Curtis, a child protective service investigator for DCS, testified that she received a report about the victim on February 25, 2010. The next day, she and a police officer went to the victim's school. The victim was absent, so Curtis and the officer went to the victim's home and talked with her. Curtis said that the victim did not give them much information and that Curtis "felt like there was a lot of stuff going on in the home that shouldn't be." Curtis asked the victim's mother to bring the victim to the DCS office in order for Curtis to interview the victim privately. After speaking with the victim in the DCS office, Curtis and Sergeant Pafford interviewed the appellant. During the appellant's first interview, he did not admit to abusing the victim. Curtis was not present during the appellant's second interview. However, after the second interview, she spoke with him, and he admitted that he had molested the victim. Curtis said he told her that he "did not know why he had done that to [the victim]." Curtis said that she had talked with the victim in 2009 about allegations of abuse and that the victim had been "too afraid" to make allegations at that time because "she had been instructed not to."

On cross-examination, Curtis acknowledged that during the appellant's first interview, he denied abusing the victim. She said that her 2009 investigation involved abuse that allegedly occurred in 2007.

Shane Penn testified that he met the appellant when they shared a cell for two to three months at the Benton County Jail. The appellant was very loud and outspoken. At first, the appellant claimed he had been wrongly accused. However, Penn later heard the appellant talking with another cellmate about the appellant's case. Penn said that he "didn't get great detail" but that he "heard enough to know what [the appellant] did was wrong." He said he heard the appellant "went to the couch, climbed up with her, pinned her in, [and] started doing it. The oral." Penn said he later assaulted the appellant in jail "[f]or what he did" to the victim. Penn explained, "I got tired of hearing about it. At the beginning of it you didn't do it. The next minute he did it and he liked it." When Penn got out of jail, he spoke with Cendy Curtis and told her about what he had heard. Penn said he currently had sole custody of his son and that he was working for a tree service. He said he had not received anything from the State in exchange for his testimony.

On cross-examination, Penn acknowledged that he "got [his] kid back" from DCS

after he was released from jail. He said jail inmates kept their legal papers by their mattresses but denied looking at the appellant's warrant, which alleged the facts of the crime. He acknowledged that he had prior convictions, that he pled guilty to assaulting the appellant, and that he received a thirty-day sentence for his conviction.

Tiffany Chaney, the appellant's ex-wife, testified that she and the appellant were married for seven and one-half years and had one son together. On the night of February 12, 2007, while they were still married, Chaney woke up suddenly. The appellant was not in bed with her. Chaney said that she "felt something wasn't right" and that she "creeped" to the end of the hallway. Chaney saw the appellant kneeled down in front of the victim, who was lying on the couch. The appellant was licking the victim's vagina and had his fingers inside of her. Chaney said that when the appellant realized she was there, he "jumped up and told [her] to get the gun" because Chaney previously had told the appellant that she would shoot anyone who hurt her children. Chaney took the victim and the victim's sister to a friend's house but returned home to stay with the appellant. The appellant told Chaney that he was sorry and would get help. Chaney said that the appellant had threatened to kill her in the past and that she did not call the police because she was afraid of him and losing her children. After three or four days, the victim returned home. The appellant hugged the victim and Chaney and told them that he would not abuse the victim again and never meant to hurt the victim. Chaney said that after the victim returned home, she did not leave the victim alone with the appellant and "quit sleeping."

On cross-examination, Chaney acknowledged that in April 2010, her family moved to Hollow Rock, Tennessee. The victim knew of the planned moved and was upset about it because she had a boyfriend and did not want to move away from him. Chaney acknowledged that the appellant was a truck driver in 2007 and that she "mess[ed] around" with William Tindall Todd, a registered sex offender, while the appellant was working away from home. In 2009, Chaney spoke with Cendy Curtis. However, she did not tell Curtis about the appellant's performing oral sex on the victim in 2007. Chaney said she did not tell Curtis about the abuse because she did not think the appellant abused the victim more than one time.

The victim, who was sixteen years old at the time of trial, testified that in 2007, she was twelve years old and lived in Big Sandy with the appellant, her mother, her sister, and her brother. On the night of February 12, 2007, the victim was sleeping on the couch because her bed was broken. The victim woke up with her shorts and undergarment on the floor and the appellant's head between her legs. The appellant's tongue was in her vagina. The victim tried to push the appellant away, but he held her so she could not move. The appellant told the victim to "shh," and the victim did as she was told. The victim's mother walked into the room, and the appellant went into the kitchen with her. The victim said that

her mother and the appellant were screaming and fighting and that the appellant kept apologizing to her mother. The victim's mother told her and her sister to pack their clothes because they were leaving.

The victim testified that she and her sister went to a friend's house for three days. The victim spoke with the appellant over the telephone, and the appellant told her that she would be in trouble if she did not return home. The victim thought she was going to get a beating if she did not go home, so she went back to live with her mother and the appellant. When she got home, the appellant hugged her and her mother, cried, and told them he was sorry. The appellant claimed he had been sleepwalking, but the victim said he was awake when he performed oral sex on her. The victim denied making up the allegations in order to get back at the appellant for moving the family to Hollow Rock. She acknowledged that she was asked about the sexual abuse in 2009. She said she denied the abuse at that time because she thought the appellant would whip her.

On cross-examination, the victim acknowledged that she had a boyfriend at the time of the sexual abuse and that he would spend the night at her home. The appellant wanted the victim's boyfriend to leave, which upset the victim. The appellant would beat the victim every night while the victim's mother was at work, and the beatings continued for three or four years. The victim said the appellant did not start driving a truck and being away from home "until year before last." The victim never told anyone before trial about the beatings.

On redirect examination, the victim acknowledged that she wrote a letter to the district attorney's office in which she stated that she was beaten every night. On recross examination, the defense showed the victim a bus ticket, and she acknowledged that it showed the appellant went to Atlanta, Georgia, in 2007. At the conclusion of the victim's testimony, the State rested its case.

Johnny Sterling testified for the appellant that he was an inmate in the Benton County Jail with the appellant and Shane Penn and that he never heard the appellant talk about the appellant's case. He said that inmates charged with sex offenses were perceived "[v]ery badly" by other inmates and that sex offenders did not discuss their cases because "[i]t's a sure way to get killed."

On cross-examination, Sterling testified that he served 111 days in jail for burning a van. He said that he was not in jail the entire time the appellant was there, and he acknowledged that he did not know what the appellant said during the time he was not in jail with the appellant. Sterling was in an inmate in the jail when Penn assaulted the appellant, but he did not witness the assault.

The jury convicted the appellant of rape of a child, a Class A felony, and incest, a Class C felony. After a sentencing hearing, the trial court merged the incest conviction into the rape of a child conviction and sentenced the appellant to twenty-five years in confinement. The trial court ordered that the appellant serve the sentence consecutively to a prior sentence.

## II. Analysis

### A. Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support the convictions because he repeatedly denied any wrongdoing during his first interview, Sergeant Pafford did not write down his alleged "confession," a 2009 investigation did not result in any charges against him, and he was "on the road a lot" as a truck driver in 2007. The appellant also argues that Shane Penn and Tiffany Chaney were not credible witnesses and that the victim had a motive to make false allegations against him because she was upset about the family's moving to Hollow Rock. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Rape of a child is the "unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the

defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7). Relevant to this case, a defendant commits incest when the defendant "engages in sexual penetration . . . with a person, knowing the person to be, without regard to legitimacy . . . [t]he [defendant's] . . . stepchild[.]" Tenn. Code Ann. § 39-15-302(a)(1).

Taken in the light most favorable to the State, the evidence shows that on the night of February 12, 2007, the victim woke up with the appellant's tongue in her vagina. The victim's mother witnessed the incident. Sergeant Pafford and Lieutenant Allen testified that the appellant told them during his second interview, "I don't know why I touched the girl." Cendy Curtis said that she spoke with the appellant after his second interview and that he told her he did not know "why he had done that" to the victim. As stated previously, the credibility of the witnesses is within the purview of the jury. See State v. Millsaps, 30 S.W.3d 364, 368 (Tenn. Crim. App. 2000) (stating that "the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier[ ] of fact"). In the instant case, the jury obviously resolved the issue of witness credibility in favor of the State. Therefore, the evidence is sufficient to support the convictions.

### B. Cross-examination About Photographs

Next, the appellant contends that the trial court erred by refusing to allow him to question the victim about nude photographs taken of her by William Tindall Todd, a registered sex offender, when she was about ten years old. The appellant contends that he should have been able to cross-examine the victim about the photographs pursuant to Rule 412, Tennessee Rules of Evidence, in order to "explore the possibility" that Todd, not the appellant, raped the victim on February 12, 2007. The State contends that the trial court properly refused to allow the appellant to question the victim about the photographs. We agree with the State.

Before trial, the appellant filed a motion requesting that he be allowed to cross-examine the victim about the photographs. The appellant argued that the evidence was admissible pursuant to Rule 412(c)(1), Tennessee Rules of Evidence, which provides that evidence of a victim's sexual behavior may be admissible in order to protect the constitutional rights of the accused. During a hearing on the motion, the appellant informed the trial court that the photographs were relevant to show that the victim had contact with Todd when she was ten years old and that it may have been Todd who raped the victim in 2007 when she was twelve years old. The trial court overruled the motion, stating, "The Court does not see how that could be relevant concerning whether or not this particular Defendant did or did not commit the criminal sexual conduct."

Tennessee Rule of Evidence 412 acknowledges that under certain circumstances, the

exclusion of evidence about a victim's sexual behavior may violate a defendant's right of confrontation, his right to present a defense, and, more broadly, his right to a fair trial. Accordingly, Tennessee Rule of Evidence 412(b) permits the introduction of reputation or opinion evidence of a victim's sexual behavior only if "admitted in accordance with the procedures in subdivision (d) of this Rule and required by the Tennessee or United States Constitution." Subsection (c)(1) of the Rule more extensively provides that "[e]vidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this Rule, and the evidence is . . . [r]equired by the Tennessee or United States Constitution[.]" If evidence of a victim's sexual behavior satisfies either subsection (b) or subsection (c), Tennessee Rule of Evidence 412(d)(4) further requires as a prerequisite to admissibility a determination by the court that the probative value of the evidence outweighs its unfair prejudice to the victim.

Rule 412 is a rule of relevance. State v. Brown, 29 S.W.3d 427, 430 (Tenn. 2000). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. See State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

Turning to the instant case, we initially note that the appellant did not make an offer of proof regarding the victim's proposed cross-examination testimony. See Tenn. R. App. P. 36(a). In any event, we agree with the trial court that the evidence was not relevant. The fact that Todd may have taken nude photographs of the victim when she was ten years old was not relevant to the issue of the appellant's guilt or innocence in raping the victim two years later. Therefore, the trial court did not err by overruling the appellant's motion.

### C. Consecutive Sentencing

Finally, the appellant contends that the trial court erred by ordering him to serve his twenty-five-year sentence consecutively to a prior sentence. The State contends that the trial court properly sentenced the appellant. We agree with the State.

No witnesses testified at the appellant's sentencing hearing. However, the State read into evidence a letter written by the victim. In the letter, the victim stated, "'I can finally come home from school and not worry about my dad touching me or beating me until I'm black and blue to the point that I can't sit down.'" The victim also stated that she was "free now from all that horror and pain. I don't have to cry myself to sleep or wear blue jeans to bed." The victim stated that the appellant had "messed things up" for her but that she was

-8-

finally getting through her past. She stated that she hoped the appellant had learned his lesson and that he served his time in prison "slowly."

The State introduced the appellant's presentence report into evidence. According to the report, the then thirty-eight-year-old appellant was divorced and a high school graduate. In the report, the appellant described his mental and physical health as "fair" and stated that he did not abuse alcohol or use illegal drugs. The appellant also stated in the report that he worked as a roofer for Wade Dortch Roofing from April 2008 to April 2010 and October 2002 to October 2007 and that he worked as a truck driver for Werner Enterprises from October 2007 to February 2008. The report shows that the appellant was convicted of rape and incest against the victim's stepsister prior to his being convicted in this case and that he received an effective ten-year sentence. According to the report, those offenses occurred on February 24, 2010. The appellant attached a handwritten statement to the report in which he stated that he did not commit the offenses and that his stepdaughters lied about the abuse because they did not want the family to move from Big Sandy.

The trial court merged the incest conviction into the conviction for rape of a child and noted that the mandatory sentence for rape of a child was twenty-five years. See Tenn. Code Ann. § 39-13-522(b)(2)(A). Regarding consecutive sentencing, the trial court determined that the appellant should serve his twenty-five-year sentence consecutively to the ten-year sentence because the time span of the undetected sexual activity was "great in this case. I want to think seven (7) or eight (8) years[.]" The trial court noted that the appellant was the victim's stepfather and concluded that the victim's letter supported a finding of residual physical or mental damage to the victim.

Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Susan Renee Bise, ___ S.W.3d ___, No. E2011-00005-SC-R11-CD, 2012 Tenn. LEXIS 645, at *76 (Knoxville, Sept. 26, 2012). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate

the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. The trial court may impose consecutive sentencing upon finding the existence of any one of the criteria. In the instant case, the trial court imposed consecutive sentencing upon finding that the appellant was

> convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of [appellant's] undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5).

The appellant argues that the time span in which the alleged offenses against the victim and her stepsister went undetected was not especially lengthy, occurring for about three years, not seven or eight years as the trial court stated. The appellant also argues that there was no evidence of mental or physical injury to the victim.

The appellant was the stepfather of the victim and her stepsister. Regarding the nature and scope of the sexual contact, the record does not reveal the specific facts surrounding the appellant's convictions for abusing the victim's stepsister. However, the appellant was convicted of sexually penetrating the victim's stepsister, and the evidence in the instant case shows that he performed cunnilingus on the victim and held her down when she tried to push him away. As to the time span of the abuse, nothing demonstrates that the appellant abused the victim or her stepsister more than one time. However, the victim suggested in her letter to the trial court that there had been ongoing inappropriate touching. The victim also stated in her letter that she was free from the "horror and pain" caused by the appellant, that she used to cry herself to sleep, and that she was slowly getting though her past. Therefore, the record supports that the victim suffered from residual mental damage. We conclude that the trial court properly imposed consecutive sentencing.

That said, the State argues that the trial court improperly merged the appellant's conviction for incest into his conviction for rape of a child. We agree with the State. See

-10-

State v. Nancy Blue, No. W2008-00187-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 297, at *6 (Jackson, Apr. 23, 2009) (stating that because the offenses of rape and incest are "legally and factually distinct," the trial court erred by merging the defendant's convictions). Therefore, the appellant's conviction for incest is reinstated.

Although not raised by the appellant, we note that the trial court sentenced him to twenty-five years for the rape of a child conviction pursuant to Tennessee Code Annotated section 39-13-522(b)(2)(A), which provides that the minimum mandatory sentence for a defendant convicted of the offense is twenty-five years. However, that provision of the statute did not go into effect until July 1, 2007, almost five months after the appellant committed the offense. Therefore, upon remand, the trial court is to resentence him for both convictions.

## III.  Conclusion

Based upon the record and the parties' briefs, we conclude that the evidence is sufficient to support the appellant's convictions, that the trial court did not err by refusing to allow the appellant to question the victim about nude photographs, and that the trial court did not err by ordering consecutive sentencing. However, the trial court erred by merging the appellant's convictions and by sentencing him to twenty-five years for the rape of a child conviction pursuant to Tennessee Code Annotated section 39-13-522(b)(2)(A). Therefore, the appellant's incest conviction is reinstated, and the case is remanded to the trial court for resentencing for both convictions.

_____
NORMA McGEE OGLE, JUDGE

-11-