# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs March 3, 2015

## STATE OF TENNESSEE v. TAMMY JOY OGDEN

**Appeal from the Circuit Court for Hardeman County**
**Nos. 35CC1-2014-CR-18, 35CC1-2014-CR-113   J. Weber McCraw, Judge**

_____

**No. W2014-01851-CCA-R3-CD  -  Filed May 20, 2015**

_____

The Defendant, Tammy Joy Ogden, pleaded guilty in case number 35CC1-2014-CR-18 to delivery of morphine, a Class C felony, and to delivery of carisoprodol, a Class D felony. *See* T.C.A. §§ 39-17-417(a)(2) (2012) (amended 2014) (delivery), 39-17-408(b)(1)(I) (2014) (classifying morphine as a Schedule II controlled substance), 39-17-412(c)(5) (2014) (classifying carisoprodol as a Schedule IV controlled substance). The trial court sentenced the Defendant as a Range III, persistent offender to concurrent terms of ten years' confinement for the morphine conviction and eight years' confinement for the carisoprodol conviction. In case number 35CC1-2014-CR-113, the Defendant pleaded guilty to delivery of morphine, a Class C felony, and to delivery of alprazolam, a Class D felony. *See id.* §§ 39-17-417(a)(2) (delivery); 39-17-408(b)(1)(I) (morphine); 39-17-412(c)(1) (classifying alprazolam as a Schedule IV controlled substance). The court sentenced the Defendant as a Range III, persistent offender to concurrent terms of ten years' confinement for the morphine conviction and eight years' confinement for the alprazolam conviction. The court also ordered the sentences in each case to be served consecutively to each other, for an effective twenty-year sentence. On appeal, the Defendant contends that the court erred by (1) denying her alternative sentencing and (2) imposing partially consecutive service of the sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Karen T. Fleet (on appeal), Bolivar, Tennessee, and Falen Chandler (at plea and sentencing), Somerville, Tennessee, for the appellant, Tammy Joy Ogden.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the guilty plea hearing on July 18, 2014, the State summarized the factual bases of the pleas: In case number 35CC1-2014-CR-18, Agents Drewery and Cook of the Twenty-Fifth Judicial District Drug Task Force made arrangements on January 24, 2013, for a confidential informant to call the Defendant to purchase morphine pills. Agent Drewery ultimately purchased five thirty-milligram morphine pills from the Defendant for $50. During the exchange, carisoprodol was also offered for purchase. In case number 35CC1-2014-CR-113, the agents made arrangements on January 16, 2013, to purchase a controlled substance from the Defendant. Agent Drewery purchased ten morphine pills and eight alprazolam pills from the Defendant at her home.

At the sentencing hearing, the Defendant testified that she had spinal cancer, cervical cancer, multiple sclerosis, and chronic obstructive pulmonary disease. She also had a right knee replacement for which she was attending therapy three days per week. She was sometimes unable to care for herself and had a nurse, who sometimes fed or bathed her. She took prescription medication. She apologized for "com[ing] in this county and do[ing] this" and said that it would never happen again.

On cross-examination, the Defendant testified that she did not "take issue" with the presentence report and acknowledged her prior criminal convictions. She agreed that she had sold drugs from her house. She denied that house arrest would allow her to commit crimes easily and said she had moved since the offenses.

Nurse Felicia Brown testified that she visited the Defendant five days per week. She assisted the Defendant with showers, ran errands, reminded the Defendant to take her medications, cleaned and cooked, and sometimes fed the Defendant. She said the Defendant took many medications and could not care for herself daily.

Johnny Dillinger, the Defendant's fiancé, testified that he had lived with the Defendant for about nineteen months but had been dating her for about two years. He said that sometimes the Defendant could not get up at night to use the restroom and had to use a bedpan. He said the Defendant had difficulty walking due to her multiple sclerosis, had recently undergone a knee replacement, fell frequently, and was forgetful. He provided assistance to the Defendant, whom he was with most of the time, and answered any questions she had as a result of her forgetfulness.

Mr. Dillinger testified that he helped take the Defendant to her doctors'

appointments, that she sometimes had two or three appointments per week, and that she had a physical therapy session scheduled for that morning. He said that if the Defendant received house arrest, he would ensure she complied with the restrictions and that if a fine were assessed, he would ensure she was "responsible" for paying it.

The presentence report showed that the fifty-two-year-old Defendant had previous convictions for burglary, aggravated motor vehicle theft, three counts of felony theft, five counts of misdemeanor theft, attempt to commit a felony, ten drug-related offenses, vandalism, three counts of driving under the influence (DUI), reckless driving, and four counts of driving with a suspended, cancelled, or revoked license. The first conviction occurred in 1983 when the Defendant was twenty-one years old, and the last occurred in 2011 at age forty-nine. For nine of the convictions, the Defendant received probation or received a suspended sentence. She violated the rules of probation in 1993, and her probation was revoked for a period of time. At the time of the report, an active arrest warrant existed in Oklahoma.

Relative to the Defendant's general background, the Defendant dropped out of high school after the eleventh grade. She did not consume alcohol and reported numerous health-related issues. She was taking celexa for depression, and she had received mental health counseling and drug and alcohol counseling. She had received a medical furlough pending the sentencing hearing. She was divorced, and she had four adult children. She had been employed previously, most recently from 2004 to 2009. She left her last employment due to cancer. She received Social Security disability benefits.

Based upon the evidence presented at the guilty plea and sentencing hearings, the trial court found that the Defendant was a Range III, persistent offender. Relative to enhancement and mitigating factors, the court found that enhancement factor (1) and mitigating factor (1) applied. *See* T.C.A. §§ 40-35-114(1) (2014) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"); 40-35-113(1) (2014) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]"). Based upon these factors, the court sentenced the Defendant in case number 35CC1-2014-CR-18 to ten years' confinement for delivery of morphine and to eight years' confinement for delivery of carisoprodol. In case number 35CC1-2014-CR-113, the court sentenced the Defendant to ten years' confinement for delivery of morphine and to eight years' confinement for delivery of alprazolam.

Relative to whether the sentences should be served concurrently or consecutively, the trial court found that the Defendant was an offender whose record of criminal activity was extensive and included incidents that had occurred over a long period of time and that she was a professional criminal who knowingly devoted much of her life to criminal

-3-

activity. After ordering concurrent service of the sentences within each case, the court ordered the sentences for the two cases to be served consecutively, for an effective twenty-year sentence.

Relative to alternative sentencing, the trial court noted the Defendant's physical and possible mental health issues, her criminal history, her "previous actions," her character, and the fact that her drug charges arose from activity in her home. In considering the Defendant's potential for rehabilitation, the court noted its concern about her ability to rehabilitate and to follow the rules of probation due to her long history of criminal activity.

In considering whether measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant, the trial court found that probation had not deterred the Defendant from continuing to break the law. The court also found that probation would depreciate the seriousness of the offenses because house arrest and probation "would put [the Defendant] back into the element where she was violating the law." Finally, the court found that a need existed to deter others likely to commit the same offenses. The court ordered confinement, noting that the Defendant's health issues did not justify imposition of service other than in the Department of Correction. This appeal followed.

# I

## Alternative Sentencing

The Defendant contends that the trial court erred by denying her alternative sentencing based solely upon her criminal record and that alternative sentencing would have been appropriate based upon her "poor physical condition" and Mr. Dillinger's testimony. The State responds that the Defendant's criminal history was a proper basis for the denial of alternative sentencing and that her medical condition did not support alternative sentencing. We agree with the State.

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014); *see Trotter*, 201 S.W.3d at 654.

The record reflects that the trial court considered the appropriate principles of sentencing and that it imposed within-range sentences for each conviction. The court considered the Defendant's physical and mental health issues but questioned her potential for rehabilitation while noting her long history of criminal activity. *See* T.C.A. § 40-35-103(5), (1)(A). Additionally, the court found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant, that probation would depreciate the seriousness of the offenses, and that a need existed for an effective deterrent to others likely to commit the same offenses. *See id*. § (1)(C), (1)(B). Finally, the court noted that the Defendant's health issues did not present sufficient suitability for alternative sentencing.

The record supports the trial court's findings relative to the Defendant's lack of potential for rehabilitation, her long history of criminal conduct, and the frequent, unsuccessful application of measures less restrictive than confinement. The Defendant's prior record included thirty convictions, nine of which were felonies, that took place over the span of twenty-eight years. *See id*. § (1)(A). Additionally, in 1993, the Defendant's probation was revoked. Finally, the Defendant received probation or a suspended sentence in 1990 and again in 1991 for four offenses, and in each instance, she continued to violate the law while on probation. *See id*. § (1)(C). Although the Defendant suffered from numerous health issues, her health did not prevent her from violating the law since age twenty-one. Further, as a Range III, persistent offender, we note she was not a favorable candidate for alternative sentencing. *See id*. § 40-35-102(6)(A) (2014) ("A defendant who does not fall within the parameters of subdivision (5), and who is an *especially mitigated* or *standard offender* convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence

of evidence to the contrary[.]" (emphasis added)). Therefore, we conclude that the court did not abuse its discretion by denying alternative sentencing.

## II

### Consecutive Sentencing

The Defendant contends that the trial court erred by imposing partially consecutive sentences based solely upon her criminal record and that her sentences did not reasonably relate to the severity of the offenses. The State responds that the Defendant's criminal history was a proper basis for the court's imposition of consecutive sentences and that the effective sentence was within range for multiple convictions for delivering a controlled substance. We agree with the State.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). The abuse of discretion with a presumption of reasonableness also applies to the imposition of consecutive sentences. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). A trial court has broad discretion in determining whether to impose consecutive service. *Id.* A trial court may impose consecutive sentencing if it finds by a preponderance of the evidence that one of the criterion is satisfied in Tennessee Code Annotated section 40-35-115(b)(1)-(7) (2014). In determining whether to impose consecutive sentences, though, a trial court must ensure the sentence is "no greater than that deserved for the offense committed," and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4); *see State v. Desirey*, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995).

The record reflects that the trial court found that the Defendant was an offender whose record of criminal activity was extensive as well as a professional criminal who knowingly devoted much of her life to criminal activity. *See* T.C.A. § 40-35-115(b)(2), (1). Although the Defendant does not explicitly discuss these criteria in her brief, the record supports the court's findings that she had an extensive record of criminal activity and that she was a professional criminal who knowingly devoted her life to criminal acts as a major source of livelihood. The Defendant's prior record included at least thirty convictions for various crimes, including burglary, attempt to commit a felony, vandalism, and various theft-, drug-, and traffic-related offenses. *See id.; see also State v. Samuels*, 44 S.W.3d 489, 494 (Tenn. 2001) (holding that the trial court did not err by imposing consecutive sentences because the defendant–who had previous convictions for selling narcotics, aggravated burglary, numerous burglary and theft offenses, grand larceny, drug possession, assault, criminal trespassing, and criminal impersonation–was a professional criminal who knowingly devoted himself to criminal acts as a major source

of livelihood and an offender whose record of criminal activity was extensive); *State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) (holding that the trial court did not abuse its discretion by imposing consecutive sentences because the defendant had an extensive record of criminal activity–including an extensive history of juvenile problems and misdemeanor convictions, an aggravated burglary conviction, and four convictions for sale of cocaine–and was a professional criminal who knowingly devoted himself to criminal acts as a major source of livelihood). Although the record supports both of the aforementioned criteria, support for only one criterion is needed. *See State v. Mickens*, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003) (stating that because the criteria contained in Tennessee Code Annotated section 40-35-115(b) are "stated in the alternative," only one criterion needs to be supported for the imposition of consecutive sentencing). Therefore, we conclude that the court did not abuse its discretion by imposing partially consecutive sentences.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE